## S. T. SMALTZ v. J. B. HANCOCK & CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 10, 1888—Decided February 6, 1888.

Plaintiffs declared in assumpsit against the surety on a sealed contract claiming upon a promise to pay in consideration of a forbearance to sue. After a plea, an additional count in covenant claiming upon a breach of the contract was filed. On a trial, there was a verdict for the plaintiffs conditionally.

Six years thereafter, the jury fee was paid by plaintiffs, judgment entered and execution issued. On a rule to stay the execution, it was made to appear by consent of parties, that performance of the condition was impossible and known at the time of the verdict. The court thereupon vacated the judgment, set aside the verdict and ordered a new trial.

Then the defendant demurred to the additional count for the misjoinder of covenant with assumpsit. The court overruled the demurrer with leave, the plaintiffs withdrew the counts in assumpsit and the defendant pleaded to the additional count, covenants performed. The defendant then moved for an order on the plaintiffs for payment of costs accrued, which was refused.

After a second trial on the merits and an absolute verdict and judgment for the plaintiffs, on writ of error, taken by the defendant: *Held,*

1. That under the circumstances, it was not error to vacate the first judgment, to set aside the first verdict and order a new trial.
2. Nor was it error to overrule the demurrer, and to refuse the order on the plaintiffs for the payment of costs accrued.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 422 January Term 1887, Sup. Ct.; court below, No. 290 December Term 1876, C. P. No. 4.

On December 2, 1876, Joseph B. Hancock and Miles King, trading as J. B. Hancock & Co., brought assumpsit against Samuel T. Smaltz, declaring:

That, before the making of the promise and undertaking of the defendant hereinafter mentioned, a certain action was about to be instituted by the plaintiffs against the defendant, that he keep with them a certain covenant whereby the defendant became responsible for the faithful performance of certain articles of agreement on the part of one Joseph M. Price; said articles of agreement being made between the plaintiffs on the one part, and the said Joseph M. Price of the other part, and dated July 5, 1872, by the terms whereof the said Joseph M. Price, in consideration of the laying of the bricks of ten houses, in said agreement more particularly described, agreed with the plaintiffs to pay them six dollars for the laying of each thousand of bricks; and it was further agreed that the laying of said bricks was to be paid for by the said Price as follows, to-wit: first, two thirds in cash as the work progressed and became due; second, by the conveyance of a certain property on Cambridge street, the thirtieth house east of Margaret street, in the twenty-third ward of the city of Philadelphia, for the price or sum of seven hundred dollars, subject to a mortgage debt of nine hundred dollars upon said property, and the balance of said one third in good trade.

That said Joseph M. Price failed to convey the said house, but, with intent to defraud and deceive the plaintiffs in this respect, and with knowledge of the defendant, conveyed another house on said street, representing and leading the plaintiffs to believe that it was the house mentioned and described in said agreement; that the plaintiffs when they found the deception and fraud which had been perpetrated upon them, which they did soon after the conveyance had been made, and while going with said Smaltz, the defendant, to look at the house conveyed, then and there refused to accept the said house as conveyed by the said Price. Whereupon the said Smaltz stated that a different disposition had been made of the house described in said agreement and he then and there, to-wit: on or about December 10, 1872, specially promised and undertook, in consideration of the premises, and that the plaintiffs, at the special instance and request of the defendant, would forbear from commencing, or instituting, or prosecuting the said action against him, he would within a reasonable time pay to the plaintiffs the sum of one thousand dollars. And the plaintiffs, confiding in the said promise and undertaking of the defendant, forbore to commence or institute and prosecute said action; yet the defendant, not regarding, etc.

The declaration contained also the common counts.

The house described in the agreement referred to, the thirtieth on Cambridge street, as a matter of fact had previously been conveyed to some one else. When the mistake was discovered, Smaltz and Hancock visited the row of houses to select another and, as was alleged by Smaltz, but denied by Hancock, the latter agreed that the plaintiffs would accept a deed for the thirty-second house, which deed was made to Miles King, the other partner, under date of December 2, 1872, the conveyance being subject to a certain mortgage. The acceptance of this deed as the house-payment on the articles was denied by the plaintiffs.

A plea having been entered, on February 3, 1880, an additional count to the narr. was filed, setting out in full the articles of agreement with Joseph M. Price, "which indenture, sealed with the seal of the said defendant, the plaintiffs now bring here into court," and averring that the defendant cove-

nanted to become responsible for the faithful performance of said agreement on the part of said Price, etc., etc., laying the damage to which the plaintiffs were entitled at $2,000.

At a trial of the issue on May 17, 1880, the jury rendered a verdict for the plaintiffs for $700, conditioned that the house conveyed to them be re-conveyed. On October 21, 1880, a rule for a new trial was discharged, and an order made amending the verdict to conform with the pleadings.

On May 1, 1886, the plaintiffs paid the jury fee, had judgment entered and issued a fieri facias. A rule to set the fieri facias aside and to stay the proceedings was made absolute on May 22, 1886.

At this time or soon afterwards it was made to appear that prior to the beginning of the suit, Miles King, to whom the thirty-second house on Cambridge street had been conveyed on December 2, 1872, had refused to pay the interest upon a mortgage against it, the property had been sold by the sheriff upon a judgment thereon, and on July 17, 1886, a rule to set aside the verdict of May 17, 1880, resulted in the following order:

Whereas the verdict in this case (see minute book C. P. No. 4, 1880, page 429) was ordered to be amended as follows: verdict for plaintiff, $700, on the condition that the plaintiff re-convey to the defendant lot of ground and house thereon situate on the southeast side of Cambridge street, the 30th house and lot east of Margaret street in the 23d ward of the city of Philadelphia, subject only to a mortgage of $900, and the execution be stayed until the condition is complied with, and the rule for a new trial discharged. On May 1, 1886, a fieri facias was issued, based upon the above verdict, whereupon a rule was taken by the defendant to set the same aside, which rule was made returnable Saturday, May 15, 1886. Upon the hearing of said rule on May 22, 1886, it appearing to the court, by admission of the counsel for plaintiff and defendant, that the said verdict was impossible of enforcement by reason of the sale of said 30th lot by the sheriff before verdict, the said rule was made absolute.

Now, to wit: July 17, 1886, in pursuance of the foregoing, the court order and decree, that the verdict in the above case, and the judgment entered thereon, be set aside, and that a new trial be granted.[1]

On November 16, 1886, the defendant demurred to the additional count, specifying a misjoinder of the count in covenant with the counts in assumpsit.   On argument, the court granted leave to the plaintiffs to withdraw the counts in assumpsit and overruled the demurrer.[2]

On November 22, 1886, the defendant pleaded "covenants performed" to the additional count and the same day moved for an order on the plaintiffs to pay the costs then accrued, which motion was refused.[4]

At the trial on February 16, 1887, before ARNOLD, J. evidence was introduced on the one side and on the other with respect to the acceptance of the conveyance of December 2, 1872, for the thirty-second house instead of the thirtieth, a receipt therefor appearing indorsed of that date upon the articles; and, at the close of the testimony, the defendant requested the court to charge:

1. Even if the plaintiffs did not accept the house conveyed, they were bound to demand a conveyance of the right house from Price, within a reasonable time, and at the same time offer to reconvey the house which had been conveyed to them; and if they did not do this, the verdict should be for the defendant.

Answer: Refused in those terms.   If they did not accept it, they would not be bound by a conveyance to them without their consent.[5]

2. The plaintiffs having receipted on December 2, 1872, for the house conveyed on that day to Miles King, as in full performance of the covenant to convey, they cannot, by their own uncorroborated oaths, set aside their own writing; and there being no corroboration of their testimony, the verdict should be for the defendant.

Answer: Refused.   The question is, did the plaintiffs get the house the writing called for; or, if not, did they accept another in lieu thereof?[6]

3. Under all the testimony in this case, the verdict should be for defendant.

Answer:   Refused.[7]

Under the instructions of the court submitting the question of fact referred to the jury, a verdict was rendered for the plaintiffs for $1,288.   Judgment being entered, the defendant took this writ, assigning for error:

1. The order of July 17, 1886, setting aside the verdict of May 17, 1880, and the judgment entered thereon on payment of the jury fee, May 1, 1886.[1]

2, 3. The order allowing the withdrawal of the counts in assumpsit and overruling the defendant's demurrer.[3]

4. The refusal of the motion for an order upon the plaintiffs to pay the costs accrued.[4]

5–7. The answers to the defendant's points.[5 to 7]

*Mr. John Dolman* (with him *Mr. J. P. Dolman*), for the plaintiff in error :

1. The power of the court to set aside its own judgment ends with the term at which it is entered: Catlin v. Robinson, 2 W. 379; Mathers v. Patterson, 33 Pa. 487; Wood v. Anderson, 25 Pa. 407; King v. Brooks, 72 Pa. 363; Stephens v. Cowan, 6 W. 511; Ullery v. Clark, 18 Pa. 148; Commonwealth v. Mayloy, 57 Pa. 297; In re Sheppard, 77 Pa. 302. The necessity for definite and fixed terms is ruled in Horton v. Miller, 38 Pa. 270. More than six years had elapsed after the verdict was rendered, and the court had no power then to set it aside: Conrad v. Insurance Co., 81* Pa. 66; Huston v. Mitchell, 14 S. & R. 307. The defendant is not precluded by having pleaded and gone to trial: Wood v. Anderson, 25 Pa. 407; Association v. Hoagland, 87 Pa. 326.

2. The declaration was in assumpsit and the additional count was in covenant, which was a misjoinder: 1 Chit. Pl. 201*. Moreover, by permitting the counts in assumpsit to be withdrawn and a count in covenant to be substituted, a change in the form of action was effected, which could only be done under the act of May 10, 1871, P. L. 265, and on payment of costs accrued at the time of the amendment. But the change was not merely of the form, but of the cause of action. The cause of action set forth in the original narr. was a promise by the defendant to pay a certain sum in consideration of forbearance. The additional count in covenant, or more properly the amended narr., declared in covenant for the original breach of the agreement. That the substitution of a new cause of action is not authorized, is well settled: Tatham v. Ramey, 82 Pa. 130; Tyrrill v. Lamb, 96 Pa. 464; Root v. O'Neil, 24 Pa. 326; Ebersoll v. Krug, 5 Binn. 51; Newlin v.

Palmer, 11 S. & R. 98; Schoneman v. Fegley, 7 Pa. 433; Royse v. May, 93 Pa. 454.

3. The plaintiffs, by signing the written acknowledgment and by neglecting to demand a conveyance of the right house, or to tender a reconveyance of the one they had received, within a reasonable time, misled the surety into a fancied sense of security, and in the mean time the principal debtor became insolvent. Either a direct statement by the creditor, or acts calculated thus to mislead the surety, will discharge the latter: Carpenter v. King, 9 Met. 511; Thornburgh v. Madren, 33 Ia. 380; Bank v. Rudolph, 5 Neb. 527.

4. It is a settled rule that when an instrument of writing is sought to be impeached by an equitable defence, the uncorroborated testimony of one of the parties is insufficient: Association v. Hetzel, 103 Pa. 507; Railway Co. v. Swank, 105 Pa. 555; Phillips v. Meily, 106 Pa. 536. The receipt, indorsed upon the articles, evidenced a compromise settlement between the parties, and was therefore within the rule.

*Mr. Thomas R. Elcock*, for the defendants in error:

1. The plaintiff might complain of the setting aside of the verdict of May 17, 1880, and the judgment entered thereon, but how can the defendant assign as error an order in his favor? The record, however, shows he joined in the proceedings.

2. When the additional count was filed on February 3, 1880, the defendant did not demur but went to trial on his pleas already in. When the new trial was ordered, and the defendant then demurred, plaintiffs withdrew the counts in assumpsit, and the cause was ready for trial on the plea of covenants performed to but the one existing count. There was no change of the cause of action. The pleadings had stood for six years and there had been one trial upon them. The defendant suffered no wrong. His plea admitted the covenant, and he attempted to show performance.

3. There was no acceptance by King of the house conveyed. He declined it at once, and never did an act showing ownership or control over it. It was in evidence that the receipt of the conveyance of the house, indorsed on the articles, was signed by Hancock because he believed they were the grantees of the house described in the articles. Why should King reconvey

what he never owned or accepted? The question was as the court charged, "did the plaintiffs get the house the writing called for; or, if not, did they accept another in lieu thereof?" Two trials, on a question of fact, should satisfy any one.

OPINION, MR. JUSTICE PAXSON :

The verdict rendered in this case on May 17, 1880, was not only vague and uncertain, but appears to have been impossible of execution. The house which the plaintiffs were to reconvey as a condition of their having judgment for $700 did not belong to them, and they allege never did belong to them. A deed therefor had been made to them by one Joseph M. Price under the agreement between the plaintiffs and said Price, of July 5, 1872. This house, however, was not the house that contract called for, and when the plaintiffs discovered this they declined to accept the deed, and the house so conveyed was subsequently sold by the sheriff. The plaintiffs alleged that the deed described the wrong house and that this was a fraud, not a mistake. They therefore commenced this suit to recover the value of the house which they were to have received, viz., $700, and succeeded in getting a verdict for that amount, but coupled with a condition that they reconvey a house which they did not own nor even claim to own.

Why this mistake was not corrected when the verdict was rendered I cannot understand, unless it be the plaintiffs had not then discovered the fraud practiced upon them. Be that as it may, the matter was allowed to sleep until May 1, 1886, when the plaintiffs paid the jury fee, entered judgment upon the verdict, and issued an execution for the $700. The defendant then came in with a motion to set aside the fieri facias which was so proceeded in that upon July 17, 1886, the court below set aside not only the execution but also the verdict and judgment entered thereon, and granted a new trial. The plaintiffs prior to the first trial had filed an additional count in covenant, the first count having been in assumpsit; the additional count was demurred to, after the order for the new trial; the demurrer was overruled. A plea was then put in to the additional count, and on the same day a motion was made for an order on the plaintiffs to pay costs up to that time and for a continuance of the cause. The continuance was

granted, but the order for costs was denied. The case subsequently proceeded to trial with the result of an unconditional verdict for plaintiffs for $1,288.

The principal question involves the power of the court below to set aside a verdict and judgment entered some six years before. It was not done upon the ground of fraud, nor was it for a mistake committed by the clerk in recording the judgment. In Cohn v. Scheuer, 115 Pa. 178, we permitted a verdict to be amended after it had been recorded and judgment entered thereon, so as to make it conform to the verdict actually rendered by the jury. In cases of fraud and for the correction of the misprision of a clerk, the lapse of time appears to be no bar to the reformation of a record: Cohn v. Scheuer, supra, and cases there cited. But we are not dealing with either of these questions now, and if this were all, we would not hesitate to say that the court below had no power to set aside the judgment and grant a new trial. It is not all, however. In the order of court of July 17, 1886, it is stated that "on the 30th of April, 1886, a fieri facias was issued, based upon the above verdict, whereupon a rule was taken by the defendant to set the same aside, which rule was made returnable Saturday, May 15, 1886. Upon the hearing of the said rule upon May 22, 1886, it appearing to the court by admission of counsel for plaintiff and defendant, that the said verdict was impossible of enforcement by reason of the sale of said thirtieth lot by the sheriff before verdict, the said rule was made absolute."

We have here on the record the admission of defendant's counsel that at the time the verdict was rendered the condition thereof was impossible of performance. There is nothing upon the record to indicate that the defendant objected to the setting aside of the judgment, nor is there any trace of such objection in any part of the record of the subsequent trial. The judgment which was set aside was a judgment against him and he may have been entirely willing to see it set aside and have another chance before the jury. While it was not for him to take a writ of error for the reason that he was not injured, yet we think, in view of all the circumstances of the case, especially of the fact that the court below was endeavoring to correct that in the administration

of the law, which, though not a slip of the clerk, was at the same time of so grave a character as to amount to a fraud had it been known to the defendant and concealed from the court. The defendant should have objected at some stage of the proceedings. He remained quiet and took his chance of a verdict. If he did not wish to be bound he should have said so. He should have made some objection or some protest and not have misled the court and the plaintiffs and subjected the latter to the expense of a new trial.

We do not see any error in overruling the demurrer to the additional count. The said count was in proper form and set forth a good cause of action. Nor are we disposed to reverse because the court did not impose costs upon the alleged change of the form of action. The change consisted of filing a count in covenant in an action on the case. This count was filed in 1880 and, as before stated, prior to the first trial. This application was made upon the second trial, six years afterwards.

Judgment affirmed.