80 A.3d 1219

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Jeffrey Michael BORRIN, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 30, 2011.

Resubmitted Aug. 13, 2013.

Decided Oct. 30, 2013.

Frank P. Barletta, Esq., Hazleton, Jacqueline M. Carroll, Esq., West Chester, Luzerne County District Attorney's Office, for Commonwealth of Pennsylvania.

Nandakumar Palissery, Esq., Palissery Law Offices, for Jeffrey Michael Borrin.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

Justice TODD.

In this case on appeal by allowance, the trial court issued two orders imposing sentence upon Appellee, Jeffrey Michael Borrin; the first, on May 18, 2006, and the second, three years later, on June 12, 2009. On appeal, the Superior Court held that the trial court did not have the inherent power to issue the latter order. For the reasons that follow, we affirm.

In the early afternoon hours of July 24, 2005, in connection with a charity event, several persons were riding motorcycles southbound on Route 309 in Wilkes–Barre, Pennsylvania. At that same time, Appellee was driving his vehicle on Route 309 in the opposite direction. His child was in the back seat of the car. As the motorcycles approached, Appellee crossed the double yellow line and drove directly into them. One person, William Delaney, was killed, and four others, Linda Delaney, Paul Huber, Mark Hozlock, and Michael Jacobs, were seriously injured. A blood test to which Appellee submitted upon his arrest showed he had .76 nanograms of morphine in his system.

As a result, Appellee was charged in a criminal information with the following offenses: Count 1, homicide by vehicle while driving under the influence; Count 2, homicide by vehicle; Counts 3, 4, 5, 6, aggravated assault by vehicle while driving under the influence; Counts 7, 8, 9, 10, 11, accidents involving death or personal injury while not properly licensed; Count 12, endangering the welfare of children; Counts 13, 14, driving while under the influence of alcohol or a controlled substance; Counts 15, 16, recklessly endangering another person; Count 17, driving while operating privilege is suspended/revoked; Count 18, driving while operating privilege is suspended/revoked, driving under the influence related; Count 19, driving on the right side of the roadways; and

Count 20, reckless driving.[1] On March 20, 2006, Appellee entered an open guilty plea to all 20 counts in the information in the Court of Common Pleas of Luzerne County, before the Honorable Chester B. Muroski.

On May 18, 2006, following a hearing, Appellee was sentenced. In open court, the trial court pronounced Appellee's sentence as follows:

THE COURT: ... Count 1 with the mergers, 36 to 72 months. [Count 3] Aggravated assault, the one with Mrs. Linda Delaney, 16 to 32 months consecutive.

The one aggravated assault, Count 4, with Paul Huber, 12 to 24 months consecutive.

Count 5, involving Mark Hozlock, 12 to 24 months consecutive.

Count 6, involving Michael Jacobs, aggravated assault, 12 to 24 months consecutive.

[Count 7] Accidents involving death or severe injury involving William Delaney, 16 to 32 months consecutive.

[Counts] Eight, nine, ten and 11, they will all be probation, consecutive to each other, one year on each. That's eight, nine, ten and 11.

[Count 12] Endangering the welfare of a child, your own son, sir, three to six months consecutive.[2]

Counts 15 and 16, six months consecutive. Count 16, six months probation consecutive.

There are summaries [Counts 17, 18, 19, 20] involving fines. We'll impose the standard range on the fines, plus one [Count 18] carries a mandatory 60 days. That will be consecutive.

1. 75 Pa.C.S.A. § 3735(a) (Count 1); 75 Pa.C.S.A. § 3732 (Count 2); 75 Pa.C.S.A § 3735.1; (Counts 3, 4, 5, 6); 75 Pa.C.S.A. § 3742.1(a) (Counts 7, 8, 9, 10, 11); 18 Pa.C.S.A. § 4304 (Count 12); 75 Pa.C.S.A. §§ 3802(d)(1)(ii), (d)(2) (Counts 13, 14); 18 Pa.C.S.A. § 2705 (Counts 15, 16); 75 Pa.C.S.A. §§ 1543(a), 1543(b)(1), 3301(a), 3736(a) (Counts 17, 18, 19, 20).

2. At sentencing, the trial court did not refer to Counts 13 and 14, driving while under the influence of alcohol or a controlled substance, which it subsequently determined merged into Count 1. *See infra* p. 1222.

* * *

THE COURT: [Appellee] gets [258 days] credit for time served.

N.T., 5/18/06, 17–18.

On that same day, Appellee's sentence was reduced to writing. The trial court's May 18, 2006 sentencing order states:

Sentence on [Case No.] 3032–05

ct 1 Homicide by vehicle while DUI$^{F2}$ → 36-72 mo. SCI

ct 2 Homicide by vehicle$^{F3}$ → merge w/ct 1

ct 3 Aggravated assault by vehicle while DUI$^{F2}$ → 16-32 mo. cons. ct 1

ct 4 Aggravated assault by vehicle while DUI$^{F2}$ → 12-24 mo. cons. ct 1

ct 5 Aggravated assault by vehicle while DUI$^{F2}$ → 12-24 mo. cons. ct 1

ct 6 Aggravated assault by vehicle while DUI$^{F2}$ → 12-24 mo. cons. ct 1

ct 7 Accidents involving death/injury while not prop. lic.$^{F3}$ → 16-32 mo. cons. to ct 1

ct 8 Accidents involving death/injury while not prop. lic.$^{F3}$ → ⎤ Probation
ct 9 Accidents involving death/injury while not prop. lic.$^{F3}$ → ⎥ 1 yr cons. to
ct 10 Accidents involving death/injury while not prop. lic.$^{F3}$ → ⎥ each other*
ct 11 Accidents involving death/injury while not prop. lic.$^{F3}$ → ⎦ and ct 1

ct 12 Endangering welfare of children$^{M1}$ → 3-6 mo. cons. ct 1

ct 13 DUI (3802d1ii) → $^{M1}$ merge into ct 1

ct 14 DUI (3802d2)$^{M1}$ → merge into ct 1

ct 15 Recklessly endangering a/o person$^{M2}$ → ⎤ 6 mo. probation
ct 16 Recklessly endangering a/o person$^{M2}$ → ⎦ cons. to ct 1

* * *

Summary Offenses:

[ct 17] Driv while oper. priv. is susp/revoked → $200
1543a

[ct 18] Driv while oper. priv. is susp/revoked → $500
1543b1

[ct 19] Driv on right side of roadways 3301a → $25

[ct 20] Reckless Driving 3736a → $200

*

60 days incarceration consec. to ct 1
(on 1543b1)

258 days credit time served
8/27/05-3/9/05 & 3/14/06-5/18/06

Trial Court Order, 5/18/06.[3, 4]

Neither party filed a motion to modify sentence in the trial court and no appeal was filed from the May 18, 2006 order. On June 9, 2006, Appellee was committed to the custody of the Department of Corrections ("DOC") to commence serving his jail sentence.

Over two years later, in October 2008, the trial court was asked by the DOC to comment on Appellee's application for participation in a pre-release program. Responding in a letter, the trial court informed the DOC that the District Attorney's Office of Luzerne County had determined that Appellee was ineligible for participation in such a program *"at this stage of his sentence."* Letter of 11/17/08 (emphasis

**3.** The May 18, 2006 order is attached to this opinion as Appendix A. This document was signed by the trial court and was docketed on May 18, 2006 by the Clerk of Courts as the "Order—Sentence/Penalty Imposed." Thus, contrary to the conclusion of Justice Eakin in his Dissenting Opinion, we find this signed, written sentencing document, entered on the docket, to be a valid sentencing order. *See Hill v. U.S. ex rel Wampler*, 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283 (1936) ("The only sentence known to the law is the sentence or judgment entered upon the records of the court.").

**4.** According to a notation thereon, the order was amended on May 19, 2006. The record does not reveal what amendments, if any, were made to the order, nor do the parties presently make any reference to the notation or to any such amendments. Therefore, for purposes of this appeal, the notation has no relevance.

original). The trial court further informed the DOC that a review of the transcript from Appellee's sentencing hearing, which was enclosed for the DOC's consideration, "demonstrates beyond all doubt that the intent of this court was to impose *consecutive sentences.*" *Id.* (emphasis original).[5] The trial court also offered that the "disposition sheet" [6] "is incorrect in that it states several counts are to run consecutive to Count 1 and, therefore, could be construed to mean that all counts subsequent to Count 1 were concurrent with each other. Clearly that was not the intent of this court." *Id.*

On May 26, 2009, the Commonwealth filed a Petition to Clarify Sentence ("Petition"). In the Petition, the Commonwealth alleged that it and the DOC understood Appellee's sentence differently: while the Commonwealth calculated Appellee's aggregate term of imprisonment to be 93 to 186 months, the DOC calculated it to be 52 to 104 months. Petition at ¶¶ 4, 8. The Commonwealth further averred that the DOC's calculation of Appellee's sentence was incorrect, and requested a hearing on the matter.

The trial court held a hearing on the Commonwealth's Petition on June 12, 2009. After reviewing the contents of the letter it sent to the DOC on November 17, 2008, the trial court stated: "I can certainly tell you what I intended to do; ... and I placed it in this correspondence, that it's consecutive, one after another and not concurrent. Each count is consecutive to each other and not concurrent with each other." N.T., 6/12/09, at 10.

**5.** Where, as here, a defendant pleads guilty to multiple offenses, the trial court must determine and state whether the sentences it imposes on each count will be served concurrently or consecutively. *See* Pa. R.Crim.P. 705(B). A consecutive sentence is one that commences at the termination of a prior sentence. A concurrent sentence is one that is served simultaneously with the sentence or sentences with which it is concurrent. *See Commonwealth v. Ashe,* 11 A.2d 891, 892 (1940); *see also* 21A Am. Jur. 2d Criminal Law § 835 (2013).

**6.** There is no document in the certified record designated as the "disposition sheet;" there is only the May 18, 2006 order. We assume the trial court was commenting on the May 18, 2006 order when it referred to the "disposition sheet" in its letter.

Accordingly, in an order dated June 12, 2009, over Appellee's objections, the court granted the Commonwealth's Petition and restated Appellee's sentence. In relevant part, as compared to the May 18, 2006 order, the June 12, 2009 order deleted the phrase "cons. [to] ct. 1" from the sentences of incarceration for Counts 3, 4, 5, 6, 7, 12 15, 16, and 18, and the phrase "cons. to each other and ct. 1" from the sentences of probation for Counts 8, 9, 10, and 11, and stated each of these sentences as consecutive to every non-merged, preceding Count. The June 12, 2009 order provided:

AND NOW, this 12th day of [June], 2009, the District Attorney of Luzerne County's Petition to Clarify Sentence is hereby GRANTED. Defendant is sentenced as follows:

 a. Count One Homicide by Vehicle while DUI → 36 to 72 months;

 b. Count Two Homicide by Vehicle → merges with Count One;

 c. Count Three Aggravated Assault by Vehicle While DUI → 16–32 months consecutive to Count One;

 d. Count Four Aggravated Assault by Vehicle While DUI → 12–24 months consecutive to Counts One and Three;

 e. Count Five Aggravated Assault by Vehicle While DUI → 12–24 months consecutive to Counts One, Three and Four;

 f. Count Six Aggravated Assault by Vehicle While DUI → 12–24 months consecutive to Counts One, Three, Four and Five;

 g. Count Seven Accidents Involving Death/Injury While not Properly Licensed → 16–32 months consecutive to Counts One, Three, Four, Five and Six;

 h. Count Eight Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six and Seven;

 i. Count Nine Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecu-

tive to Counts One, Three, Four, Five, Six, Seven and Eight;

j. Count Ten Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six, Seven, Eight and Nine;

k. Count Eleven Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine and Ten;

l. Count Twelve Endangering the Welfare of Children → 3–6 months consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven;

m. Count Thirteen DUI → Merges with Count One;

n. Count Fourteen DUI → Merges with Count One;

o. Count Fifteen Recklessly Endangering Another Person → 6 months probation consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve;

p. Count Sixteen Recklessly Endangering Another Person → 6 Months probation consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve, concurrent to Count Fifteen.

q. Count Seventeen: Driving While Operating Privilege is Suspended/Revoked 75 Pa.C.S.A. [§ ]1543a → $200 fine;

r. Count Eighteen: Driving While Operating Privilege is Suspended/Revoked DUI Related 75 Pa.C.S.A. [§ ]1543b1 → 60 days incarceration consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve and Sixteen, and a $500 fine;

s. Count Nineteen: Driving on the right side of Roadways 75 Pa.C.S.A. [§ ]3301 a → $25 fine; and

t. Count Twenty: Reckless Driving 75 Pa.C.S.A. [§ ]3736a → $200 fine.

Trial Court Order, 6/12/09.[7]

Appellee appealed the June 12, 2009 order to the Superior Court, contending it impermissibly modified the May 18, 2006 order, and increased his sentence in violation of double jeopardy principles. *Commonwealth v. Borrin*, 12 A.3d 466, 471 (Pa.Super.2011) (*en banc*). The Commonwealth countered that the trial court neither modified nor increased Appellee's sentence by issuing the June 12, 2009 order, but merely clarified the terms of the sentence it imposed on Appellee on May 18, 2006. Alternatively, the Commonwealth argued that the June 12, 2009 order reflected the trial court's use of its inherent power to rectify obvious errors in the record. *Id.*

In a unanimous *en banc* decision, the Superior Court reversed the June 12, 2009 order and remanded for reinstatement of the May 18, 2006 order. Evidently rejecting the Commonwealth's argument that the June 12, 2009 order was not a modification, but a clarification, of Appellee's sentence,[8] the court observed that the June 12, 2009 order was well outside the 30–day window provided by Section 5505 of the Judicial Code, 42 Pa.C.S.A. § 5505,[9] for modifying or rescinding a final order. *Borrin*, 12 A.3d at 471 (citing Section 5505).[10] Accordingly, the Superior Court considered the Com-

7. The trial court's June 12, 2009 order is attached to this Opinion as Appendix B.

8. Although the Superior Court acknowledged the Commonwealth's position that the June 12, 2009 order did no more than clarify the sentence already imposed on Appellee, the court did not give its reasons for rejecting that argument. *Id.* at 471.

9. Section 5505 of the Judicial Code provides the trial court 30 days to modify or rescind a final order, provided no appeal has been taken or allowed. Section 5505 states: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505.

10. In so doing, by way of background, the Superior Court discussed the limits it believed double jeopardy principles place upon a trial court's power to correct a clear error in a sentence already served. *See Borrin*, 12 A.3d at 472, 473–74. As this discussion was unnecessary to the

monwealth's alternative argument, and, upon acknowledging that the trial court had "the inherent, common-law authority to correct 'clear clerical errors' in its orders" at any time, asked whether the June 12, 2009 order reflected a valid exercise of that power by the trial court. *Id.* (citations omitted).

To answer this question, the court formulated the following rule: If the trial court's intention to impose a certain sentence on Appellee was obvious on the face of the sentencing transcript, but its written order did not conform to its clearly stated sentencing intention, then it could exercise its inherent power to correct what constituted a clear clerical error in the May 18, 2006 order. If, on the other hand, the trial court's stated intentions during Appellee's sentencing hearing were ambiguous, there was no clear error in the May 18, 2006 order for the trial court to correct. *Borrin,* 12 A.3d at 473–74.

Applying this rule to the record, the Superior Court found: "Although the trial judge subsequently communicated to the Department of Corrections [in 2008] that he intended to impose the counts following count 1 consecutive to each other and all prior counts, the trial judge's intentions in this regard were not clearly and unequivocally expressed at [Appellee's] sentencing. Rather, on the face of the sentencing transcript, the trial judge's use of the word 'consecutive' [in 2006] was ambiguous." *Id.* at 475. According to the Superior Court, this was so because the term "consecutive" as used at the sentencing hearing could mean that certain of Appellee's sentences are to run consecutively to Count 1 only, or consecutively to each other. *Id.* Thus, the court concluded the transcript from Appellee's sentencing did not show there was

court's resolution of the case, it was *obiter dicta,* and, as such, we decline to address it. *See In re Kenin's Trust Estate,* 343 Pa. 549, 560, 23 A.2d 837, 842 (1942) ("[I]n every case, what is actually decided is the law applicable to the particular facts; all other conclusions are but obiter dicta." (internal quotation marks and citation omitted)). Likewise, we will not discuss the responses the parties have made respectively in this appeal to the Superior Court's observations regarding the application of double jeopardy principles in cases involving claims of sentence modification.

a clear clerical error in the May 18, 2006 order subject to the trial court's inherent power of correction. *Id.*

We granted discretionary review to the Commonwealth to consider "[w]hether the Superior Court erred in reversing the trial court's order correcting a clerical error [or] clarifying the court's judgment of sentence?" *Commonwealth v. Borrin,* 610 Pa. 551, 22 A.3d 1020 (2011) (order). The Commonwealth raises a question of law; thus, our scope of review is plenary and our standard of review is *de novo. Commonwealth v. Holmes,* 593 Pa. 601, 614, 933 A.2d 57, 65 (2007).

The Commonwealth's primary argument is straightforward. It contends that the Superior Court's analysis of the restraint Section 5505 places upon trial courts to modify orders is inapt because this case concerns nothing more than the trial court's authority to clarify a sentence it imposed, explain that all of Appellee's sentences of incarceration run consecutively to Count 1 and to each other, and issue an order restating the consecutive nature of Appellee's sentences more clearly. According to the Commonwealth, the trial court's authority to take such action may be exercised at any time.[11]

Alternatively, the Commonwealth argues that, even assuming the June 12, 2009 order altered the May 18, 2006 order and the sentence stated therein, the order is valid because it corrected an obvious mistake in the order which erroneously indicated that Appellee's sentences of incarceration and probation run consecutively only to Count 1. Referring to a copy of the May 18, 2006 order, the Commonwealth asserts that "even though the court made no such statements [on May 18, 2006]

11. Section 323 of the Judicial Code gives trial courts the jurisdiction to enforce their orders, which arguably includes the authority to issue clarifying orders. Section 323 states:

Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.

42 Pa.C.S.A. § 323.

in imposing sentence" it appears that "the [Clerk of Courts of Luzerne County] created these errors by writing on court documents that subsequent sentences were consecutive to the first count." Brief of the Commonwealth at 9 (citing R.R. 21a–22a). Pointing to the transcript from the sentencing hearing, the Commonwealth maintains that the June 12, 2009 order was made necessary by the Clerk of Courts who acted "in contradiction of the court's [oral] sentencing order, in which the trial judge stated that each sentence was consecutive." *Id.* (citing R.R.18a–19a).[12]

In response, Appellee argues the May 18, 2006 order, when read as a whole, states that his sentences of probation run consecutively both to Count 1 and to each other, and that his sentences of imprisonment run consecutively to Count 1 and concurrently with one another. Therefore, Appellee continues, the June 12, 2009 order, which makes all of his sentences consecutive, does indeed represent a modification of his sentence. Echoing the Superior Court, Appellee further asserts the June 12, 2009 order is invalid because the May 18, 2006 order was not subject to modification as it contains no obvious error regarding the sentence he was given by the trial court.

■ We begin our analysis with the Commonwealth's contention that the instant appeal must be resolved in its favor because the only action the trial court took in issuing the June 12, 2009 order was to clarify the terms of the sentences it imposed on Appellee on May 18, 2006—that all of Appellee's sentences are consecutive, not just to Count 1, but, also, to each other. According to the Commonwealth, this is so because the trial court explained in its 2008 letter to the DOC that, when it sentenced Appellee on May 18, 2006, it intended that all of his sentences run one after another.

12. There is nothing in the certified record that establishes the involvement, if any, of the Clerk of Courts in the preparation of the May 18, 2006 order or that allows us to identify the "court documents" the Commonwealth references in its argument. As noted *supra* note 3, in this regard, the certified record contains only the sentencing order dated May 18, 2006, which was signed by the trial court and docketed by the Clerk of Courts on that date as the "Order—Sentence/Penalty Imposed."

██ We disagree. In Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed. *See Commonwealth, ex rel. Powell v. Depart. of Corrections,* 14 A.3d 912, 915–16 (Pa.Cmwlth.2011); *Commonwealth v. Green,* 232 Pa.Super. 555, 335 A.2d 392, 393 (1975). As we have stated, the "signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence." *Commonwealth v. Isabell,* 503 Pa. 2, 12, 467 A.2d 1287, 1292 (1983) (internal quotation marks and citations omitted). Thus, the comments the trial court made after-the-fact, in 2008 and 2009, regarding its subjective intent when sentencing Appellee and the sentence it meant for Appellee were irrelevant to the process of order clarification the trial court was authorized to undertake. Rather, when asked by the Commonwealth to clarify its sentencing intent and the sentence it imposed on Appellee in 2006, the trial court should have focused on the text of the May 18, 2006 order itself and construed it in its entirety according to established canons of construction. *See Commonwealth, ex rel. Speaks v. Rundle,* 209 Pa.Super. 227, 224 A.2d 805, 807 (1966) (explaining that a sentence, as any other judgment, is construed in its entirety under the usual canons of construction so as to give effect to the intent of the sentencing court).

When we look to the text of the May 18, 2006 order and read it as a whole, it does not state that both the sentences of probation and the sentences of incarceration imposed on Appellee run consecutively to each other. The sentences of probation and the sentences of incarceration are worded differently, and that difference is significant. While the May 18, 2006 order states that the sentences of probation for Counts 8, 9, 10, and 11 are consecutive to Count 1 and consecutive to each other, the order states that the sentences of incarceration for Counts 3, 4, 5, 6, 7, 12, 15, 16, and 18 are consecutive to Count 1, period. Because the sentences of probation are designated as consecutive to each other, but the sentences of incarceration are not, by negative implication, the sentences of

incarceration are not consecutive to each other. That being the case, the May 18, 2006 order provides that Appellee's sentences of incarceration for the latter Counts are, relative to one another, concurrent.

Accordingly, we conclude the trial court's subsequent June 12, 2009 order, by stating all of Appellee's sentences as consecutive to Count 1 and to each other, did not clarify Appellee's sentence, but modified it. On June 12, 2009, however, there was no statute or rule that gave the trial court jurisdiction to take such action in Appellee's case.

 That said, on that day, the trial court retained the inherent power to correct errors in its records or orders so they speak "the truth," and thereby reflect what actually took place in judicial proceedings. *See Commonwealth v. Rusic*, 229 Pa. 587, 591, 79 A. 140, 141 (1911) (acknowledging a trial court's inherent authority to amend its record so as to make it conform to the truth); *Smaltz v. Hancock*, 118 Pa. 550, 558, 12 A. 464, 466 (1888) (acknowledging a trial court's inherent authority to amend a verdict after it was recorded, and judgment was entered thereon, so as to make it conform to the verdict the jury actually rendered). Thus, the June 12, 2009 order may be upheld as authorized, but only if it constitutes an exercise of the court's inherent power to correct an error in the May 18, 2006 order in setting forth Appellee's sentence.

We have set a high bar for differentiating between errors that may be corrected under the inherent powers of trial courts, and those that may not, describing correctible errors as those determined to be "patent and obvious mistakes." *Commonwealth v. Klein*, 566 Pa. 396, 400, 781 A.2d 1133, 1135 (2001). The term "clerical error" has been long used by our courts to describe an omission or a statement in the record or an order shown to be inconsistent with what in fact occurred in a case, and, thus, subject to repair. *See, e.g., Commonwealth v. Silcox*, 161 Pa. 484, 496–97, 29 A. 105, 106 (1894) (upholding the trial court's direction to correct a "clerical" omission and amend the record to state that the defendant was present at every stage of the proceedings); *Common-*

*wealth v. Liscinsky,* 195 Pa.Super. 183, 171 A.2d 560, 561 (1961) (explaining that the sentencing order contained a "clerical" error subject to correction, as it did not reflect that the trial court specifically stated at sentencing that the sentence it imposed was effective on expiration of defendant's federal sentence); *Commonwealth v. Mount,* 172 Pa.Super. 258, 93 A.2d 887, 888 (1953) ("Clerical errors or inaccuracies in docket entries [or orders] may be corrected by the trial court so that they conform to the facts.").

Most recently, in *Commonwealth v. Holmes* and its companion case, *Commonwealth v. Whitfield,* we emphasized that a trial court's inherent power of correction encompasses not only those patent and obvious errors that appear on the face of an order, but extends to such errors that emerge upon consideration of information in the contemporaneous record. *Holmes,* 593 Pa. at 618, 933 A.2d at 67.

Thus, in *Holmes,* because the docket sheet showed that Holmes had violated parole, we concluded that the trial court's May 2001 order sentencing him to an entirely new sentence for the violation, instead of recommitting him to serve the remainder of his original sentence imposed in 1997, contained a patent and obvious error that the trial court was empowered to correct in April 2002 in a second order under its inherent powers; it conflicted with the rule that a parole violator must be recommitted to serve only the balance on his sentence as originally imposed. *Id.* at 616–17, 933 A.2d at 66. Likewise, in the companion case, because the record showed that Whitfield had been sentenced in 1992 to a term of incarceration, but never to probation, we concluded that an order the trial court entered in September 2001, revoking probation and imposing a sentence upon him as a parole violator, contained a patent and obvious error that the trial court could correct by issuing a second sentencing order in October 2002. *Id.* at 617, 933 A.2d at 66.

At the same time, we emphasized that the inherent power of trial courts to correct orders is a limited power because it was the "obviousness" of the illegal and erroneous nature of the sentences reflected in the trial courts' orders rather than the

illegality itself that triggered the courts' authority. *Id.* at 617–18, 933 A.2d at 66–67. In addition, we cautioned that the inherent power of correction does not extend to reconsideration of a trial court's exercise of sentencing discretion or its judicial decisions, and reiterated that the defendants before us were entitled to relief because their respective cases "involve[d] clear errors in the imposition of sentences that were incompatible with the record, as in *Whitfield*, or black letter law, as in *Holmes.*" *Id.*

Guided by these pronouncements, we turn to the Commonwealth's assertion that, because the May 18, 2006 order does not reflect the consecutive sentences the trial court imposed on Appellee on all Counts at sentencing, it is erroneous and was properly corrected by the trial court.

Our review of the record reveals no patent and obvious error in the May 18, 2006 order that the trial court was empowered to correct. The transcript from Appellee's sentencing hearing shows that, when the trial court pronounced Appellee's sentences on May 18, 2006, it stated that the sentence of incarceration for Count 3, which immediately follows the sentence of incarceration for Count 1, is "consecutive," as are the sentences of incarceration that follow Count 3 (for Counts 4, 5, 6, 7, 12, 15, 16, 18); the trial court further stated that the sentences of probation (for Counts 8, 9, 10, 11) are "consecutive to each other." These statements can be understood to mean that the sentences of incarceration, like the sentences of probation, run consecutively to one another; alternatively, as set forth in the May 18, 2006 order, they can be understood to mean that sentences of incarceration run consecutively to Count 1 only and concurrently with one another. The trial court's pronouncement of Appellee's sentences is thus open to competing interpretations, and is, therefore, ambiguous. Accordingly, the pronouncement is insufficient to demonstrate that the May 18, 2006 order fails to conform to the sentence the trial court actually imposed on Appellee and thereby contains a patent and obvious error. Thus, lacking a patent and obvious error to correct, we hold the trial court did not have the inherent power to issue the

June 12, 2009 order, and we affirm the order of the Superior Court reversing the June 12, 2009 order and remanding for reinstatement of the May 18, 2006 order.

Affirmed.

Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE and Justice STEVENS join.

440

## APPENDIX A

COURT OF COMMON PLEAS - CRIMINAL DIVISION
COUNTY OF LUZERNE
THE COMMONWEALTH OF PENNSYLVANIA

☐ Guilty Plea
☒ Sentencing
☐ Revocation
☐ Other

vs.

Jeffrey M. Zern

Name

CHARGE(S)

CASE NO. 3032 YEAR 05

Sentence on
3032-05

5/18/06

ct1 Homicide by Vehicle while DUI [F2] → 36-72 mo. SCI
ct2 Homicide by Vehicle [F3] → merge w/ct1
ct3 Aggravated assault by Vehicle while DUI [F2] → 16-22 mo. conc. ct1
ct4 Aggravated assault by Vehicle while DUI [F2] → 12-24 mo. conc. ct1
ct5 Aggravated assault by Vehicle while DUI [F2] → 12-24 mo. conc. ct1
ct6 Aggravated assault by Vehicle while DUI [F2] → 12-24 mo. conc. ct1
ct7 Accidents involving death/injury while not prop. lic. [F3] → 16-62 mo. conc. to ct1
ct8 Accidents involving death/injury while not prop. lic. [F3]
ct9 Accidents involving death/injury while not prop. lic. [F3]
ct10 Accidents involving death/injury while not prop. lic. [F3]
ct11 Accidents involving death/injury while not prop. lic. [F3]
Probation to run conc. to each other and ct1
ct12 Endangering welfare of children [M1] → 3-6 mo. conc. ct1
ct13 DUI (2nd & 2 i) → [M1] merge with ct1
ct14 DUI (2nd) → [M1] merge with ct1
ct15 Recklessly Endangering the pers. [M2]
ct16 Recklessly Endangering the pers. [M2]
6 mo. probation conc. to ct1

☒ Defendant Advised of Appeal Rights

CLERK

JUDGE C. S. Muroski

Def Remanded.

W. Murphy Johnson for Vough : W. Cabbrien ....... N. Antosery

## COURT OF COMMON PLEAS - CRIMINAL DIVISION
## COUNTY OF LUZERNE
## THE COMMONWEALTH OF PENNSYLVANIA

☐ Guilty Plea
☒ Sentencing
☐ Revocation
☐ Other

vs.

Jeffrey M. Bevir

CHARGE(S):

Sentence on
3032-05

CASE NO. 3032 YEAR 05
DATE 5/18/06

Summary Offenses:

Drive while oper.priv. is susp/revoked → $200
1543a

Drive while oper.priv is susp./revoked → $500
1543b2

Drive on right side of roadway 3301a → $25

Reckless driving 3736-a → $200

60 days incarceration to ct 1 consec.
(ct 1543 b2)

258 days credit time served
7/3/05 - 7/9/05 + 3/4/06 - 5/18/06

Defendant Advised of Appeal Rights

CLERK JUDGE C. B. Mureski

ORIGINAL

442

■■■■■

# APPENDIX B

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY
vs. : CRIMINAL DIVISION

JEFFREY M. BORIN : NOS. 3032 OF 2005

## ORDER

AND NOW, this _____ day of May, 2009, the District Attorney of Luzerne County's Petition to Clarify Sentence is hereby **GRANTED**. Defendant is sentenced as follows:

a. Count One Homicide by Vehicle while DUI → 36 to 72 months;

b. Count Two Homicide by Vehicle → merges with Count One;

c. Count Three Aggravated Assault by Vehicle While DUI → 16-32 months consecutive to Count One;

d. Count Four Aggravated Assault by Vehicle While DUI → 12-24 months consecutive to Counts One and Three;

e. Count Five Aggravated Assault by Vehicle While DUI → 12-24 months consecutive to Counts One, Three and Four;

f. Count Six Aggravated Assault by Vehicle While DUI → 12-24 months consecutive to Counts One, Three, Four and Five;

g. Count Seven Accidents Involving Death/Injury While not Properly Licensed → 16-32 months consecutive to Counts One, Three, Four, Five and Six;

h. Count Eight Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six and Seven;

ROBERT F. REILLY
CLERK OF COURT
2009 JUN 12 AM 10: 25
CRIMINAL DIV.
LUZERNE COUNTY

i. Count Nine Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six, Seven and Eight;

j. Count Ten Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six, Seven, Eight and Nine;

k. Count Eleven Accidents Involving Death/Injury While not Properly Licensed → 12 months probation Consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine and Ten;

l. Count Twelve Endangering the Welfare of Children → 3-6 months consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven;

m. Count Thirteen DUI → Merges with Count One;

n. Count Fourteen DUI → Merges with Count One;

o. Count Fifteen Recklessly Endangering Another Person → 6 months probation consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve;

p. Count Sixteen Recklessly Endangering Another Person → 6 Months probation consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve, concurrent to Count Fifteen.

q. Count Seventeen: Driving While Operating Privilege is Suspended/Revoked 75 Pa. C.S.A. 1543a → $200 fine;

r. Count Eighteen: Driving While Operating Privilege is Suspended/Revoked DUI Related 75 Pa. C.S.A. 1543b1 → 60 days incarceration consecutive to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve and Sixteen, and a $500 fine;

s. Count Nineteen: Driving on the right side of Roadways 75 Pa. C.S.A. 3301a → $25 fine; and

t. Count Twenty: Reckless Driving 75 Pa. C.S.A. 3736a → $200 fine

BY THE COURT:

_____ P.J.

Justice SAYLOR, concurring.

I have some differences with the reasoning applied in the lead opinion,[1] and, therefore, I respectfully concur in the result. In my view, if the Commonwealth was dissatisfied with the judgment of sentence as framed by the trial court in its written sentencing order, it should have pursued clarification or modification in a timely fashion. Absent that, I agree with the majority and the *en banc* panel of the Superior Court that there are insufficient grounds on this record to support a belated modification of a written order which is reasonably clear on its face to lengthen Appellee's aggregate term of incarceration. To the extent there is an ambiguity in a sentencing order which has not been addressed by the Commonwealth in a timely fashion, I also believe that it is appropriate to accord a role to the rule of lenity.

Justice EAKIN, dissenting.

I must respectfully dissent. First, I find the dispositional memorandum prepared by the clerk after sentencing to be less than a "court order" such as trumps the unambiguous sentence pronounced in court. Secondly, even if it was a court order, I find the errors therein to be patent and correctable. Put another way, I find the sentence as announced to be unambiguous, as the trial judge clearly stated each relevant sentence was to run consecutively; therefore, the additions to

1. For example, in assessing whether the trial court clarified or modified Appellee's sentence, the majority indicates that the text of a sentencing order "is determinative of the [trial] court's sentencing intentions." *See* Opinion Announcing the Judgment of the Court, *op.* at 433, 80 A.3d at 1226. Further, the majority admonishes that trial court's are to put aside their own understanding of the sentence they meant to impose and evaluate their previous orders solely by reference to canons of construction. *See id.* at 433–36, 80 A.3d at 1226–27. This admonition, however, appears only to hold true in an initial assessment of the sentencing order, since the majority appears to sanction review of a sentencing-hearing transcript in determining whether a written sentencing order contains an error. *See id.* at 437–38, 80 A.3d at 1228–29.

From my point of view, to lessen the confusion in an area of law in which courts tend to make inconsistent statements, it would be preferable to simply rely more consistently on the axiom that untimely challenges to sentencing orders which are reasonably unambiguous on their face are disfavored. *Cf. id.* at 435, 80 A.3d at 1227.

the sentence made on an inter-office form comprised a patent error which the trial court was empowered to correct.

The law cited by my colleagues is not in dispute. The 30–day limit of 42 Pa.C.S. § 5505 does not affect the inherent powers of a court to amend records, correct mistakes or inadvertences of court officers or counsel, or to supplement defects or omissions in the record; to be a correctable clerical error, the error must be a patent and obvious mistake. When the trial court clearly and unambiguously states the sentence on the record, but the clerk of courts incorrectly completes the form, it is a clear clerical error subject to correction by the trial judge. *Commonwealth v. Kubiac*, 379 Pa.Super. 402, 550 A.2d 219, 231 (1988) (correction permissible where sentencing court stated on record that sentence was 5 to 20 years, but written order erroneously stated 5 to 10 years). I acknowledge there is authority stating that if the judge's sentencing pronouncement is ambiguous, the written sentencing order controls, although I suggest the cases are properly limited to their facts. *Commonwealth v. Isabell*, 503 Pa. 2, 467 A.2d 1287, 1293 (1983); *see Commonwealth v. Johnson*, 860 A.2d 146, 153 (Pa.Super.2004) (holding correction impermissible where sentencing transcript was silent as to whether sentences were to run concurrently or consecutively and order stated sentences were to run concurrently).

My first concern is what is almost casually referred to as "the order"—the term "disposition sheet" is far more apt. What we are talking about is a handwritten multi-copy, multi-colored ("NCR paper") office form, apparently used by the clerk to advise various offices of court results. There is no indicium on the copy of the form given us that it was ever made part of the trial court docket. It appears to be a versatile, ubiquitous form, for it has boxes at the top to be checked for guilty pleas, sentencings, revocations or "other" matters. A clerk identified as "SMP" filled out the sheets (there are two pages) in mostly cursive penmanship, although block printing appears here and there. The clerk checked the box marked "sentencing," as well as blocks indicating "SCI" and "Defendant advised of Appeal Rights," although it does

not note what advice was actually given. The clerk added, to appropriate pre-labeled boxes and lines, the name of the judge, the attorneys for defense and the Commonwealth, and the stenographer. Near the judge's name is a signature, presumptively added by the judge after the form was filled out by SMP. Among other information I do not enumerate herein, there appears toward the top of both sheets, written at an angle, the notation "Amended 5/19/06." There is no indication what amendment was made, by whom, or why.

The lead opinion avers "the order states that the sentences of incarceration for Counts 3, 4, 5, 6, 7, 12, 15, 16, and 18 are consecutive to Count 1, period." Opinion Announcing the Judgment of the Court Op., at 1226. This is not entirely accurate. What we actually have is the clerk's shorthand on a form. For example, as to count 3, the clerk wrote "ct 3 Aggravated assault by Vehicle while DUI," followed by a small arrow pointing to the right with "F2" printed over the arrow, and "16–32 mo. cons. ct. 1." The other above-mentioned counts are similarly fashioned. Counts 8–11, for which probation was ordered, are individually listed, followed by a brace, "}", which points to "Probation 1 yr cons. to each other * and ct 1." The asterisk apparently would have us go to the second page, where we find "60 days * incarcerations consec to ct 1 (on 1543b2)." Both the asterisk and "consec." appear distinctly above "60 days incarcerations," and the "s" in "incarcerations" has a line through it. A similar joinder by "}" is used by ct 15 and ct 16, again preceded by small arrows and "m2" above the arrows.

Frankly it is hard to interpret all of this with any great degree of confidence, but the interpretation of my colleagues is certainly reasonable. We may make this interpretation because we toil in this vineyard with regularity, but a lay person could no more read from this paper than read the Dead Sea scrolls. Certainly the judge did not speak in symbols, little arrows, asterisks, or "f2" or "m2," and he most certainly did not say "consec," much less "cons. ct 1." This form is undoubtedly useful, but it simply is not a transcription

of the sentencing order and cannot realistically purport to be so.

This document, whatever its utility, is not a proper "court order" at all. It certainly is not a document that should supersede the order as pronounced in the courtroom. Whatever the precedential value of cases stating a written order may be given interpretive preference over an oral order, the written document must first be an actual order with some presumption of clarity and completeness. Compare the 2009 order, which is a true Order of Court, not an administrative form full of abbreviated argot. Signed by the judge or not, this was but a bureaucratic certificate containing no more than a well-meaning functionary's patois. Even if its pretense as an order were conceded, this form remains but a faulty memorialization of the actual sentence [1] and does not trump the latter when determining what the order was.

There remains the question of ambiguity in what the court actually ordered. Was the pronouncement in court unambiguous such that the error in the transcription thereof is patent and correctable? Is what the judge said capable of multiple interpretations? Of course one could throw up one's hands and claim uncertainty, but a finding of ambiguity must be reasonable, not just theoretically possible. *See, e.g., Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 976 A.2d 474, 483 (2009) (emphasis added) (quoting *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company*, 588 Pa. 470, 905 A.2d 462, 468–69 (2006)) ("'A contract is ambiguous if it is *reasonably* susceptible of different constructions and capable of being understood in more than one sense.'"); *Commonwealth v. Brown*, 603 Pa. 31, 981 A.2d 893, 900 (2009) (emphasis added) (citation omitted) (affirming finding 18 Pa.C.S. § 1106(c)(1)(ii)(C) is "ambiguous, as it could *reasonably* mean

---

1. One must suspect the experienced clerk, writing the sentence for "ct 3," added "cons. Ct 1" because at the point the judge announced count 3 was to be "consecutive," that was all there was to be consecutive to. However, repeating the same addition for the subsequent counts was not accurate, as there were multiple consecutive sentences then in existence—thus, the gratuitous reference to count 1 was manifestly erroneous.

reimbursement directly to the victim or indirectly on the victim's behalf"); *Office of the Governor v. Donahue,* 59 A.3d 1165, 1168 (Pa.Cmwlth.2013) (emphasis added) (citation omitted) (" 'A statute is ambiguous . . . if its language is subject to two or more *reasonable* interpretations.' "); *Brosovic v. Nationwide Mutual Insurance Company,* 841 A.2d 1071, 1073 (Pa.Super.2004) (emphasis added) (citation omitted) (" 'An ambiguity exists only when [an insurance] policy provision is reasonably susceptible of more than one meaning.' ").

The word "consecutive" refers to starting or continuing after that which came before. Its synonyms include sequential, successive, ensuing, following, in turn, later, *etc.* It does not refer to only part of what has come before, or successive to some unstated portion of prior events. Saying nothing would mean each challenged sentence would run concurrently, as the defendant would have it, but the judge did not say nothing. By stating it was consecutive, the judge made clear his intention to the contrary. Saying consecutive means following that which came before, which necessarily included the sentences theretofore pronounced, and nothing less. Is it somehow possible to think the judge meant "consecutive but only to count one, and concurrent to all other counts"?

I cannot conclude the consecutive sentence for counts 4, 5, 6, and 7 somehow leap-frogged each other and count 3 so as to be consecutive to count one alone. The lead opinion, in my view, repeats the error of the clerk by establishing count 1 as some powerful base, and intuits that everything subsequent refers to it and it alone. If we can interpret the form's erroneous shorthand and claim we are sure of what it says, period, how do we turn around and say we are unable to determine what the judge meant in a single, clear, and simple word?

There is no magic in count 1, despite the miscalculation made by the clerk and repeated in the syllogism of my colleagues.[2] In my view, the sentencing was not ambiguous.

2. The trial judge grouped the probationary sentences together, rather than stating each individually as he had done with the sentences of incarceration. This does not introduce notions of "negative implica-

The trial judge methodically proceeded count by count and imposed a sentence of consecutive incarceration on each separate count—he followed each sentence with the word "consecutive," which refers to everything precedent, not just a portion of it selected in order to find ambiguity. The error on the form may have created a conflict, but the judge's order cannot be made retroactively ambiguous by the clerk.

I find no ambiguity in the sentence, and insofar as the gratuitous addition by the clerk on the form is somehow deemed to create one, it is a clear, patent, and obvious error which the trial judge was empowered to correct. Accordingly, I would reverse the Superior Court's decision, and respectfully dissent.

Chief Justice CASTILLE and Justice STEVENS join this dissenting opinion.

tion" as my colleagues suggest, for he was referring to multiple counts at once, not speaking individually as he did with the counts at issue. That he logically stated those sentences were "consecutive to each other" was simply the product of treating them simultaneously rather than individually.