J-S93045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL ALLEN, | |
| Appellant | No. 1076 EDA 2015 |

Appeal from the Judgment of Sentence November 10, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0003272-2012
CP-51-CR-0007389-2012
CP-51-CR-0008821-2012
CP-51-CR-0010494-2013

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED FEBRUARY 22, 2017**

Appellant, Michael Allen, appeals from the judgment of sentence imposed after his jury conviction of four counts of robbery,[1] three counts of terroristic threats,[2] and one count each of intimidation,[3] and retaliation.[4] The charges stemmed from four robberies that the court consolidated for

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3701(a)(1).

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] 18 Pa.C.S.A. § 4952(a)(1).

[4] 18 Pa.C.S.A. § 4953(a).

trial. Specifically, the jury convicted Appellant at Docket No. 3272-2012, of robbery (F1); at Docket No. 7389-2012, of robbery (F1) and terroristic threats (M1); at Docket No. 8821-2012, of robbery (F2) and terroristic threats (M1); and at Docket No. 10494-2013, of robbery (F2), intimidation (F1), retaliation (F3), and terroristic threats (M1). Appellant challenges his removal from the courtroom during trial, the admission of lay opinion testimony, and both the legality and discretionary aspects of his sentence. Upon review, we vacate Appellant's sentence, and remand to the trial court for resentencing.

We take the factual and procedural history from the trial court opinion and our review of the certified record in this matter. The facts underlying the charges at Docket No. 8821-2012, are as follows. On February 22, 2012, at approximately 7:00 p.m., Appellant entered Los Charales Market located at 9th Street and Snyder Avenue in South Philadelphia, where Antonia Rojas was working the cash register. When Appellant entered the store, he said that he had a gun and held his right hand inside his pocket. Appellant reached into the cash register and grabbed between $800 and $1,000 before fleeing from the store. Mr. Rojas waived down a police officer to report the robbery, and give officers a description of the man who robbed him. (**See** Trial Court Opinion, 10/29/15, at 4).

The facts underlying the charges at Docket No. 7389-2012, are as follows. On February 25, 2012, at approximately 8:30 p.m., Appellant entered the Rite Aid at 7th and Dickenson Streets in South Philadelphia

where Chefra Mao was working as a cashier. Appellant screamed at Ms. Mao to open the register. She assumed that he had a gun because he kept his right hand in his pocket and kept pointing it at her. Ms. Mao was scared for her life, and could not enter her code to open the register. Appellant then told Ms. Mao that he was going to come back and get her and fled from the store. Ms. Mao described Appellant to police. Police then drove her in their police car to where they had apprehended Appellant, and she stated that his clothing appeared different. Ms. Mao later identified Appellant at a police lineup and at trial. (*See id.* at 3-4).

The facts underlying the charges at Docket No. 3272-2012, are as follows. On February 25, 2012, within minutes of the Rite Aid robbery, Appellant approached Salvador Hernandez, who was walking on 6th Street from Morris Street toward Tasker Street in South Philadelphia, pressed an object against his back, and told him to put his hands up or he would blow off his head. Appellant searched Mr. Hernandez's pockets and stole $20, keys, a pack of cigarettes, and a Rite Aid card. While Appellant was robbing Mr. Hernandez, a police officer approached them. The officer raised his weapon after Appellant refused to remove his hands from his pockets, and when the officer eventually lowered his weapon, Appellant ran away. After a chase involving several officers, Appellant was apprehended and the items stolen from Mr. Hernandez were recovered. Mr. Hernandez then told police

about the robbery and identified Appellant as the man who robbed him.[5] (*See id.* at 4-5).

The facts underlying the charges at Docket No. 10494-2013, are as follows. On July 16, 2013, at approximately 3:00 a.m., Appellant approached Mr. Hernandez and grabbed him by the arm. Appellant told Mr. Hernandez that he remembered who he was, and then took $60 from his wallet. Appellant threatened to kill Mr. Hernandez if he continued to testify against him concerning the earlier robbery. (*See id.* at 5).

On August 19-25, 2014, Appellant was tried by a jury for the above four robberies. At trial, each of the victims, investigating officers, and officers involved in the February 25, 2012 chase all testified. Detective Michael McKenna, who was assigned to investigate the February 22, 2012, Los Charales Market robbery, testified that he viewed video surveillance from the market. After learning about the February 25, 2012, Rite Aid robbery, Detective McKenna also viewed video surveillance from that incident. He testified that he observed several similarities between the facial features, mannerisms, movements and body posture of the individual involved in both robberies. (*See* N.T. Trial, 8/22/14, at 29-30). Based on his observations comparing the two videos, Detective McKenna prepared a

---

[5] On November 6-8, 2012, Appellant was tried for the above three robberies. The trial ended in a hung jury. Appellant was released on June 3, 2013, after his motion for release pursuant to Pa.R.Crim.P. 600 was granted. (*See* Trial Ct. Op., at 2).

photo array for the Los Charales robbery and obtained an arrest warrant for Appellant.[6]

Throughout the course of the trial, Appellant was disruptive and often argued with the trial court judge. The record also reflects that on August 19, 2014, the trial court reprimanded Appellant for commenting out-loud within the hearing of the jury while the assistant district attorney was questioning her witnesses. (*See* N.T. Trial, 8/19/14, at 179-82). The trial court judge told Appellant that, if he continued to argue with her, she would find him in contempt.

On August 21, 2014, Appellant was again disruptive during witness testimony, arguing that the witness should not be able to answer the court's question. (*See* N.T. Trial, 8/21/14, at 74). The judge excused the jurors from the courtroom, and found Appellant in contempt. (*See id.* at 75). The court directed two sheriffs to escort Appellant to the back of the courtroom. While he was being escorted away, he reached for a water container on the table, apparently intending to throw it, and referred to the court as "Nut-ass bitch." (*Id.* at 76). Defense counsel then went in to the back and tried to calm Appellant down. After speaking with Appellant, counsel reported to the court that

_____

[6] Mr. Rojas, the Los Charales robbery victim, was not able to identify Appellant from the photo array. (*See* N.T. Trial, 8/22/14, at 35).

[Defense Counsel]: Your Honor, as counsel, I find myself in a very awkward position, to say the least, in that I've become aware of, without divulging the source, that there may be intentions that are disruptive of the legal process, and things that I cannot countenance if . . . I am aware that they're about to come about. . . . I am certainly not going to risk anybody's health or safety in this courtroom, because I know things that I should divulge but I am not going to divulge them at this point because I still owe a duty to this gentleman to remain solid as to whatever he says to me. . . .

(*Id.* at 80).

The court then had a discussion with counsel concerning its options with regard to Appellant's violent and disruptive behavior. The trial court judge stated that if Appellant continued to engage in outbursts, she would consider removing him from the courtroom to view the rest of the proceedings on closed-circuit television. (*See id.* at 82-83). Defense counsel agreed explaining that it was in an abundance of caution because he could not say what his client might do. (*See id.* at 84, 97). The court noted that it would not have the capacity to set up the closed circuit television until the next day. The court considered gagging and shackling Appellant, and allowing him to remain in the courtroom; however, defense counsel objected to gagging. (*See id.* at 88). Defense counsel discussed these options with Appellant. (*See id.* at 97-98).

When Appellant returned to the courtroom, he also objected to gagging. (*See id.* at 104). The trial court judge again warned Appellant that if he continued to disrupt trial, she would take steps to ensure the trial continued undisrupted, which might include shackles and gagging for the

rest of the trial. (*See id.* at 104-05). The court told Appellant that it now had four sheriffs in the room, to which Appellant responded: "You're going to need more than that, for the record." (*Id.* at 106; *see id.* at 105-06). Later that day, Appellant again commented out-loud during testimony, and the court again warned him not to have any outbursts. (*See id.* at 147-48).

On the next day of trial, August 22, 2014, trial commenced with Appellant seated at the table with his counsel; however, within the first twenty-minutes of the first witness's testimony, he again spoke out. (*See* N.T. Trial, 8/22/15, at 15). He then interrupted the court and asked for his counsel to be fired. (*See id.*). The court removed Appellant to a room in the back of the courtroom, where the closed circuit television had been set up in anticipation of a disruption, and where Appellant would be able to see and hear everything going on in the courtroom. (*See id.* at 16). Defense counsel objected, for the record, that the court was forcing Appellant out of the courtroom, arguing that he should be present for all proceedings. (*See id.* at 23-24). The court instructed the jury that Appellant was relocated to another room where he could watch all proceedings because he "was engaging in verbal inappropriate behavior that was disruptive of the trial[.]" (*Id.* at 25).

The jury convicted Appellant on all charges. On November 10, 2014, at the sentencing hearing, the court stated that Appellant "was found guilty on several counts of robbery, three counts of F1 robbery, one count of F2 robbery, one count of F1 intimidation, one count of F3 retaliation, and three

counts of M1 terroristic threats." (N.T. Sentencing, 11/10/14, at 41). The

court then sentenced Appellant as follows:

> 7 and-a-half to 15 years state prison on the F1 intimidation charge. On the three counts of F1 robbery, the same sentence is 7 and-a-half to 15 years to run concurrent on the three counts for a total aggregate sentence of 30 to 60 years. In addition, those sentences will run consecutive on each count. In addition, with regards to the one count of the F2 robbery, the sentence is 5 to 10 years in state prison consecutive. So the total aggregated sentence on the F1 and F2 counts in this case is 35 to 70 years in state prison.
>
> On the remaining counts, the three counts of terroristic threats, the sentence is 2 and-a-half to 5 years. These–the sentence is the same on all three counts. Those are to run concurrent with each[ ]other and to run concurrent with the 35 to 70 already imposed. In addition, on the one count of retaliation, the sentence is 3 and-a-half to 7 to run concurrent with the terroristic threats counts and to run concurrent with the F1 counts and the F2 count.

(*Id.* at 41-42).[7]

Appellant filed a timely post-sentence motion on November 20, 2014,

which was denied by operation of law on March 20, 2015. He filed a timely

notice of appeal on April 13, 2015, and pursuant to the court's order, filed a

concise statement of errors complained of on appeal on May 13, 2015. ***See***

_____

[7] We quote extensively from the sentencing transcript to refer to the sentence originally imposed by the trial court because the certified record does not contain the original sentencing orders for each docket. As discussed below, (***see infra*** at n.8), because the original sentencing orders were removed from the certified record and replaced by the trial court's corrected orders, the only contemporaneous record of the original sentence imposed by the trial court is the notes of testimony from the sentencing hearing.

Pa.R.A.P. 1925(b). The trial court entered an opinion on October 29, 2015. *See* Pa.R.A.P. 1925(a).[8]

Appellant raises five issues on appeal.

1. Did the [trial] court improperly order [A]ppellant to be physically removed from the courtroom during his trial; fail to warn [A]ppellant in advance that he could be removed and that removal would be prejudicial to the trial; and fail to instruct the jury that [A]ppellant's removal was unrelated to guilt?

2. Did the [trial] court violate due process and the rules of evidence and invade the province of the jury by permitting a police detective to testify that he compared the surveillance videos from two separate robberies and concluded that the robber of the Los Charales grocery store (a person never identified as [A]ppellant) was the same person as the robber of a Rite Aid (identified as [A]ppellant), and, further, allowed the detective to display still photographs from the two surveillance videos alongside a photograph of [A]ppellant, leaving no doubt that the detective believed [A]ppellant was the person depicted in both videos?

3. Did the [trial] court impose an illegal sentence above the statutory maximum by sentencing [A]ppellant to [not less than seven and one-half nor more than fifteen] years for robbery, a felony of the second degree, in [Docket No. ]10494-2013?

4. Are not the [trial] court's new, back-dated sentencing orders issued with its Rule 1925 [o]pinion a nullity and should they not be vacated, a position at least partially adopted by the lower court in its [s]upplemental [o]pinion?

---

[8] We observe that, after Appellant filed his notice of appeal in this matter, and without conducting a sentencing hearing or notifying Appellant or his attorney, the trial court issued several corrected sentencing orders, attempting to correct errors in the original sentence. (*See* Docket No. 8821-2012, entries D8/1 and 2, 11/10/14; Docket No. 10494-2013, entries D6/2 and 2, 11/10/14). As discussed below, (*see infra* at 15-17), we conclude that the trial court's corrected sentencing orders are a nullity.

5. Did the [trial] court abuse its discretion, violate general sentencing principles and disregard the needs of [A]ppellant and the community, when it imposed excessive, consecutive sentences totaling [not less than] thirty-five [nor more than] seventy years, a *de facto* life sentence?

(Appellant's Brief, at 4-5).

In his first issue, Appellant claims that the court erred when it removed him from the courtroom during trial. (*See id.* at 32-42). Specifically, he argues that the court failed to warn him that he would be removed if he continued to disrupt trial, and that the court failed to instruct the jury that his removal was unrelated to guilt. We disagree.

The United States Constitution[,] the Pennsylvania Constitution[,] and Pennsylvania Rules of Criminal Procedure 1117(a) guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. However, in *Illinois v. Allen*, 397 U.S. 337 (1970), the United States Supreme Court determined that the right to be present in the courtroom is not absolute and explicitly held,

> that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Commonwealth v. Basemore*, 582 A.2d 861, 866–67 (Pa. 1990), *cert. denied*, 502 U.S. 1102 (1992) (footnotes and most citations omitted; citation formatting provided).

In **_Basemore_**, our Supreme Court considered whether a trial court abused its discretion in removing an appellant from the courtroom during trial when he had been disrupting proceedings by verbally attacking the judge and berating jurors. The Court held that the trial court "followed the guidelines set forth in **_Allen_**, **_supra_** by warning [the a]ppellant before removing him from the courtroom and by giving [the a]ppellant the opportunity to return at any time provided he agreed to conduct himself properly." **_Id._** at 868.

Here, Appellant disrupted the testimony of several witnesses and was warned by the trial court that if he continued to disrupt trial he would be held in contempt. (**_See_** N.T. Trial, 8/19/14, at 179-82; N.T. Trial, 8/21/14, at 74-76). Appellant verbally abused the court and attempted to reach for a water container on a table, which the court considered a threat, while being led out of the room. (**_See_** N.T. Trial, 8/21/14, at 76). Defense counsel informed the court that he was concerned about further disruptions and requested that his client be allowed to view the rest of the proceedings on closed circuit television.[9] (**_See id._** at 80-84). Defense counsel met with Appellant and discussed the court's plan, after which the trial court again warned Appellant that if he continued to disrupt trial it would take steps to ensure that the trial continued uninterrupted. (**_See id._** at 104-06). The

---

[9] Defense counsel later objected, for the record, that Appellant was being forced out of the room. (**_See_** N.T. Trial, 8/22/14, at 23-24).

court removed Appellant on the following day after he again disrupted trial, and instructed the jury that he was removed because of the disruptions.[10] (**See** N.T. Trial, 8/22/14, at 15-16).

After careful review, we conclude that the trial court did not abuse its discretion in removing Appellant from the courtroom. The trial court followed the guidelines set forth in **Allen** by warning Appellant that he could be removed if he continued to be disruptive.[11] Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the trial court abused its discretion in permitting Detective McKenna to testify concerning the surveillance videos from the Rite Aid and Los Charales robberies. (**See** Appellant's Brief, at 43-51). Specifically, he argues that Detective McKenna's testimony was impermissible lay opinion testimony because he did not have personal knowledge as to the identity of the person in the

---

[10] To the extent that Appellant argues the court's instruction to the jury following his removal was insufficient, he has waived such claim for failure to object at trial. **See Commonwealth v. McCloskey**, 835 A.2d 801, 812 (Pa. Super. 2003) (holding appellant waived challenge to jury instruction when he failed to make specific and timely objection).

[11] Appellant has claimed that the warning was not sufficient, because the record does not reflect Appellant specifically being told that removal was an option. However, the record is clear that, not only did the court tell defense counsel about its intent to remove Appellant if he continued to disrupt, and then ask counsel to speak to Appellant about his behavior, defense counsel joined in the request to remove Appellant. (**See** N.T. Trial, 8/21/14, at 82-84, 97-98).

surveillance videos. (*See id.* at 44-48). Furthermore, he argues that the testimony was highly prejudicial because the detective who testified is a veteran of the police force. (*See id.* at 50-51). We disagree.[12]

> In reviewing a challenge to the admissibility of evidence, we note that such matters are within the sound discretion of the trial court and thus, we will reverse the trial court's decision only if the appellant sustains the heavy burden to show that the trial court has abused its discretion.
>
> It is not sufficient to persuade the appellate court that it might have reached a different conclusion; it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Brown*, 134 A.3d 1097, 1105–06 (Pa. Super. 2016), *appeal denied*, 145 A.3d 161 (Pa. 2016) (citations and quotation marks omitted).

A lay witness may offer testimony as to his opinion if the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

---

[12] Although Appellant's second question presented contends the court erred by allowing Detective McKenna to display still photographs from the videos alongside a photograph of him, he did not develop an argument in support of this claim with any pertinent legal discussion or authority. *See* Pa.R.A.P. 2119(a)-(b). Thus, we conclude it is waived. *See* Pa.R.A.P. 2101.

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701.

> "[E]vidence may be excluded if its probative value is outweighed by the danger of **unfair** prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403 (emphasis added). Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. Rather, exclusion of evidence on this ground is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case.

**Commonwealth v. Foley**, 38 A.3d 882, 891 (Pa. Super. 2012), *appeal denied*, 60 A.3d 535 (Pa. 2013) (case citations and some quotation marks omitted; citation formatting provided).

Here, the trial court explained that it permitted Detective McKenna to testify about similarities he observed between the videos, because it served as the basis for preparing a photo array and procuring an arrest warrant for Appellant for the Los Charales robbery. (**See** Trial Ct. Op., at 15). The court reasoned that Detective McKenna's testimony was essential for the jury to understand his testimony and why he considered Appellant a suspect in connection with the Los Charales robbery. (**See id.** at 17).

Upon review, we conclude that the trial court did not abuse its discretion in permitting Detective McKenna to testify about viewing the two surveillance videos and the similarities he noticed. **See Brown**, **supra** at 1105-06. The detective's testimony was based on his viewing of the videos in connection with his investigation, was helpful for the jury to understand

- 14 -

his testimony and why he connected Appellant with the robbery, and was not based on scientific or specialized evidence. *See* Pa.R.E. 701. Furthermore, the fact that the testimony came from a detective who was a veteran of the police force, does not make it unfairly prejudicial. ***See Foley***, ***supra*** at 891; Pa.R.E. 403. The trial court did not abuse its discretion in permitting Detective McKenna's testimony; therefore, Appellant's second issue does not merit relief.

Because our holding with respect to Appellant's fourth issue impacts our analysis with respect to Appellant's third issue, we have considered Appellant's fourth issue first, for ease of disposition. In his fourth issue, Appellant argues that the trial court's corrected sentencing orders, issued October 13, 2015,[13] are a nullity. (***See id.*** at 54-61). We agree.

Appellant's issue presents a question of law for which our scope of review is plenary and our standard of review is *de novo*. ***See Commonwealth v. Borrin***, 12 A.3d 466, 471 (Pa. Super. 2011), *affirmed*, 80 A.3d 1219 (Pa. 2013).

> The law is clear that a court may modify or rescind any order within 30 days after its entry, if no appeal has been taken. [***See***] 42 Pa.C.S.[A] § 5505; Pa.R.A.P. 1701(a). Thus, where a Notice of Appeal has been filed, the trial court cannot act further in the matter. However, this rule must be read in conjunction with a court's inherent powers to amend its records, to correct

---

[13] Because the trial court dated the corrected sentencing orders November 10, 2014, the same date as the original sentencing orders, we refer to the date the docket entries were printed for reference.

mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record, even after the lapse of the term. . . . Thus, under limited circumstances, even where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes.

***Commonwealth v. Klein***, 781 A.2d 1133, 1135 (Pa. 2001) (citations and quotation marks omitted). [14]

Furthermore, this Court has long held that "when a judgment has been vacated . . . the rights of the parties are left as though no judgment has been entered. . . . [and] *de novo* [re-]sentencing resuscitates the duties of the sentencing court and the rights of the defendant, including the defendant's right to personally address the court." ***Commonwealth v. Anderson***, 603 A.2d 1060, 1063 (Pa. Super. 1992) (citations and quotation marks omitted); ***see also Commonwealth v. Hobson***, 452 A.2d 22, 23 (Pa. Super. 1982) (concluding that trial court is empowered to modify sentence, yet "a criminal defendant and his attorney should be present during all aspects of sentencing.") (citations omitted).

---

[14] The law regarding what constitutes patent or obvious mistakes is less than clear. ***See e.g. Klein***, ***supra*** at 1135 (concluding, although order entered greater than thirty-days prior, court permitted to modify sentence at new sentencing hearing when original intent was clear); ***Commonwealth v. Borrin***, 80 A.3d 1219, 1227 (Pa. 2013) (holding that court could not modify sentencing order, which had been entered greater than thirty-days prior, with respect to consecutive or concurrent nature of sentences to correct ambiguity in original sentence); ***Commonwealth v. Holmes***, 933 A.2d 57, 67 (Pa. 2007) (holding court permitted to correct "clear errors in the imposition of sentences that were incompatible with the record . . . or black letter law . . . .").

In the instant case, the trial court imposed sentence on November 10, 2014. After denial of his post-sentence motions, Appellant filed a timely notice of appeal on April 13, 2015. On October 13, 2015, while this appeal was pending, the trial court *sua sponte* issued corrected sentencing orders, without notifying Appellant or his counsel and without holding a hearing. Because the trial court vacated the original sentence and imposed a new sentence, without holding a hearing or notifying Appellant, we conclude that the court erred in modifying his sentence. **See Anderson**, **supra** at 1063. We further conclude the corrected sentencing orders are improper and require a remand to the trial court for resentencing. Therefore, it is not essential for us to determine whether the trial court had jurisdiction to modify the original sentence because of patent or obvious errors, and we conclude that the corrected sentencing orders are a nullity.[15]

_____

[15] Moreover, we note that the trial court candidly conceded that the original sentencing error at Docket No. 10494-2013 was the result of confusion with respect to whether the robbery was a felony of the first or second degree, and was not a clerical error. (**See** Supplemental Trial Ct. Op., 4/07/16, at 2). The court compounded this initial sentencing error when it issued its October 13, 2015 orders, which not only altered the sentence at Docket No. 10494-2013, but also significantly altered the sentence at Docket No. 8821-2012, and increased the grading of the robbery charge in that case. The court has recognized its error with regard to Docket No. 8821-2012, and explained that the sentence imposed November 10, 2014, for that robbery was correct, and the October 13, 2015 corrected sentencing order is an error. These compound errors were all done outside the presence of Appellant and his counsel.

In his third issue, Appellant argues that the trial court erred when it sentenced him on November 10, 2014, to a term of not less than seven-and-one-half, nor more than fifteen years of imprisonment for his robbery conviction at Docket No. 10494-2013. (*See* Appellant's Brief, at 51-54). Specifically, he contends that he was convicted of robbery as a second-degree felony, thus the sentence imposed, which is above the maximum permitted for felonies of the second degree, is an illegal sentence. (*See id.*).[16]  We agree.

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Leverette***, 911 A.2d 998, 1001–02 (Pa. Super. 2006) (citations omitted).

Here, the jury returned a guilty verdict at Docket No. 10494-2013, for robbery, fear of immediate bodily injury, which is a felony of the second degree. (*See* Verdict Slip, 8/25/14; 18 Pa.C.S.A. §§ 3701(a)(1)(IV), (b). The statutory maximum sentence for a felony of the second degree is not more than ten years' imprisonment.  *See* 18 Pa.C.S.A. § 1103(2).

---

[16] We note that both the trial court and the Commonwealth concede that the sentence imposed for robbery at Docket No. 10494-2013, was illegal. (*See* Supplemental Trial Ct. Op., at 2; Commonwealth's Brief, at 32-33).

Therefore, the court's sentence of not less than seven and one-half, nor more than fifteen years of imprisonment, which is in excess of the maximum, is an illegal sentence. *See Leverette*, *supra* at 1001-02. Accordingly, we vacate the sentences imposed and remand for resentencing in all four cases in accordance with the provisions of this memorandum, because our vacation may upset the trial court's sentencing scheme.

Finally, in his fifth issue, Appellant challenges the discretionary aspects of his sentence. (*See* Appellant's Brief, at 62-66). However, because we have vacated his sentence, Appellant's challenge to the discretionary aspects of the sentence is moot.

Judgment of sentence vacated. Case remanded to the trial court for resentencing. Jurisdiction relinquished.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017

- 19 -