J-S49039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.M., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 408 EDA 2019 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000322-2018

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED DECEMBER 19, 2019**

K.M., a minor, appeals from the dispositional order entered by the Court of Common Pleas of Philadelphia, which purported to adjudicate K.M. delinquent, but also dismissed the delinquency petition after stating K.M. was "not in need of treatment, supervision or rehabilitation." Order, 1/15/19, at 1. We vacate the dispositional order and reverse the adjudication of delinquency.

On February 20, 2018, the Commonwealth filed a delinquency petition alleging that K.M. committed the following delinquent acts: carrying a firearm without a license (third-degree felony), carrying a firearm on the public streets or public property of Philadelphia, and possession of a firearm by a minor.[1] K.M. filed a motion to suppress the evidence obtained by police upon his

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 6106, 6108, and 6110.1, respectively.

detainment.  On November 19, 2018, the juvenile court heard testimony on the suppression motion but deferred its decision to review applicable case law.

On January 15, 2019, the juvenile court judge, the Honorable Amanda Cooperman, held an adjudicatory hearing at which she denied K.M.'s suppression motion and found K.M. had committed the delinquent acts alleged in the petition.  On the same day, Judge Cooperman filed an order which stated that K.M. was "GUILTY of all charges" and that "Juvenile is Adjudicated Delinquent."[2]  Order, 1/15/19, at 1.

However, the order also indicated the following: "[t]he court having found that the Juvenile is not in need of treatment, supervision or rehabilitation, the Petition is hereby DISMISSED" and the "Juvenile is discharged from GPS." Order 1/15/19, at 1.

On January 28, 2019, K.M. appealed, noting that the adjudication of delinquency was "made concurrent with the finding that [K.M.] is 'not in need of treatment.'"  Notice of Appeal, 1/28/19, at 1.  On January 30, 2019, the juvenile court filed an order directing K.M. to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Although K.M. filed an untimely 1925(b) statement on March 18, 2019, defense counsel filed a

_____

[2] This Court has emphasized that "[u]nder the Juvenile Act, juveniles are not charged with crimes; they are charged with committing delinquent acts. They do not have a trial; they have an adjudicatory hearing. If the charges are substantiated, they are not convicted; they are adjudicated delinquent." **In re R.A.**, 761 A.2d 1220, 1224 (Pa.Super. 2000) (citing 42 Pa.C.S. §§ 6302, 6303, 6341, 6352).

motion asking the lower court to accept the untimely statement, which the juvenile court granted on April 2, 2019.[3]

In his Rule 1925(b) statement, K.M. claimed *inter alia*, that the juvenile court erred by adjudicating K.M. delinquent after it found K.M. was not in need of treatment, supervision, or rehabilitation. In contrast, the juvenile court suggested in its subsequently filed 1925(a) opinion that the docket contained a "clerical error" stating that it had found K.M. was not in need of treatment, supervision or rehabilitation. Juvenile Court Opinion, 4/2/19, at 3-4 n.1 (unpaginated opinion). The juvenile court opined that this mistake occurred on the docket when the court computer system "automatically generated an erroneous statement." **Id.** Further, the juvenile court asserted that it made its adjudication of delinquency "clear" at the hearing. **Id**.

The juvenile court does not acknowledge or address the fact that its signed January 15, 2019 *order* was internally inconsistent as it stated that K.M. was not in need of treatment, supervision, or rehabilitation, but at the same time, stated that K.M. was adjudicated delinquent and that the delinquency petition was dismissed. Likewise, the parties do not address this

---

[3] It is well-established that the untimely filing of a court-ordered 1925(b) statement "is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." **Commonwealth v. Andrews**, 213 A.3d 1004, 1010 (Pa.Super. 2019) (quoting **Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa.Super. 2009)). In this case, the juvenile court did not comment on the untimely filing and addressed the merits of K.M.'s argument. Thus, it is unnecessary to remand for the preparation of a supplemental opinion.

inconsistency in their briefs and do not offer any analysis on how the juvenile court's order should be interpreted and corrected.

This Court has held that "[t]he question of whether a trial court has the authority to correct an alleged sentencing error poses a pure question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*." **Commonwealth v. Kremer**, 206 A.3d 543, 547–48 (Pa.Super. 2019) (citation omitted).

Section 5505 of the Judicial Code, which relates to the modification of orders, provides that "a court ... may modify ... any order within 30 days after its entry ... *if no appeal from such order has been taken* ...." 42 Pa.C.S.A. § 5505 (emphasis added). Generally, after an appeal is taken, the trial court "may no longer proceed further in the matter." Pa.R.A.P. 1701(a).

Nevertheless, our courts have recognized that the limits of jurisdiction set forth in Section 5505 do not impinge on the trial court's inherent power to correct any patent or obvious mistakes in its orders. **Commonwealth v. Holmes**, 593 Pa. 601, 615, 933 A.2d 57, 65 (2007); **In re K.R.B.**, 851 A.2d 914, 918 (Pa.Super. 2004) (citations omitted) (finding that "[u]nder limited circumstances, even where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes").

In this case, the juvenile court's order directly conflicts with precedential law that indicates that "under the Juvenile Act, in order to adjudicate a child delinquent, the juvenile court must (1) determine that the juvenile has

committed a delinquent act, *and* (2) determine that the juvenile requires treatment, supervision, or rehabilitation." ***Commonwealth v. M.W.***, 614 Pa. 633, 646, 39 A.3d 958, 966 (2012) (emphasis in original). Section 6341(b) of the Juvenile Act provides:

> Finding of delinquency.--If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. The court shall then proceed immediately or at a postponed hearing, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days after such finding if the child is not in detention, to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon. … In the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation. If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered.

42 Pa.C.S.A. § 6341(b).

As such, the juvenile court's order is internally inconsistent as it adjudicated K.M. delinquent after it had stated that K.M. "was not in need of treatment, supervision, or rehabilitation," dismissed the petition, and discharged K.M. from GPS. The key issue on appeal is whether the juvenile court had the inherent power to correct the order by (1) changing its stated factual finding that K.M. was not in need of treatment, supervision, or rehabilitation or (2) reversing its adjudication of delinquency.

In determining whether a trial court error constitutes a patent mistake that can be corrected by the inherent power of a trial court, our Supreme Court has provided:

> We have set a high bar for differentiating between errors that may be corrected under the inherent powers of trial courts, and those that may not, describing correctible errors as those determined to be "patent and obvious mistakes." *Commonwealth v. Klein*, 566 Pa. 396, 400, 781 A.2d 1133, 1135 (2001). The term "clerical error" has been long used by our courts to describe an omission or a statement in the record or an order shown to be inconsistent with what in fact occurred in a case, and, thus, subject to repair. *See, e.g., Commonwealth v. Silcox*, 161 Pa. 484, 496–97, 29 A. 105, 106 (1894) (upholding the trial court's direction to correct a "clerical" omission and amend the record to state that the defendant was present at every stage of the proceedings); *Commonwealth v. Liscinsky*, 195 Pa.Super. 183, 171 A.2d 560, 561 (1961) (explaining that the sentencing order contained a "clerical" error subject to correction, as it did not reflect that the trial court specifically stated at sentencing that the sentence it imposed was effective on expiration of defendant's federal sentence); *Commonwealth v. Mount*, 172 Pa.Super. 258, 93 A.2d 887, 888 (1953) ("Clerical errors or inaccuracies in docket entries [or orders] may be corrected by the trial court so that they conform to the facts.").
>
> Most recently, in *Commonwealth v. Holmes* and its companion case, *Commonwealth v. Whitfield*, we emphasized that a trial court's inherent power of correction encompasses not only those patent and obvious errors that appear on the face of an order, but extends to such errors that emerge upon consideration of information in the contemporaneous record. [*Commonwealth v.*] *Holmes*, 593 Pa. [601,] 618, 933 A.2d [57,] 67 [(2007)].
>
> ***
>
> At the same time, we emphasized that the inherent power of trial courts to correct orders is a limited power because it was the "obviousness" of the illegal and erroneous nature of the sentences reflected in the trial courts' orders rather than the illegality itself that triggered the courts' authority. *Id*. at 617–18, 933 A.2d at 66–67. In addition, we cautioned that the inherent power of

correction does not extend to reconsideration of a trial court's exercise of sentencing discretion or its judicial decisions […]. *Id*.

***Commonwealth v. Borrin***, 622 Pa. 422, 436–38, 80 A.3d 1219, 1227–28 (2013).

Further, this Court has provided that:

This Court's case law has addressed the situations where...the terms of a defendant's sentence as stated at the sentencing hearing conflict (or are deemed incompatible) with the terms of the defendant's sentence as stated in the sentencing order.

In these circumstances, for a trial court to exercise its inherent authority and enter an order correcting a defendant's written sentence to conform with the terms of the sentencing hearing, the trial court's intention to impose a certain sentence must be obvious on the face of the sentencing transcript. ... Stated differently, only when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing can there be a "clear clerical error" on the face of the record, and the [signed] sentencing order subject to later correction.

If, on the other hand, a trial court's stated intentions during the sentencing hearing are ambiguous, then the terms of the sentence in the [signed] sentencing order control, and the trial court cannot correct its perceived mistake. ***See Commonwealth v. Isabell***, 503 Pa. 2, [12,] 467 A.2d 1287, 129[2] (1983) ( [stating:] "Generally, the signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence"); .... This is because the alleged error in the sentencing transcript is not a "clear clerical error," but rather, is an ambiguity that must be resolved by reference to the written sentencing order.

***Kremer***, 206 A.3d at 548 (citation omitted).

In this case, the lower court and the parties disagree on whether the record shows that the juvenile court found K.M. was in need of treatment, supervision, or rehabilitation. In her 1925(a) opinion, Judge Cooperman asserted that the notes of testimony from the adjudicatory hearing showed

that she adjudicated K.M. delinquent after finding that K.M. had committed a delinquent act and was in need of treatment, supervision, and rehabilitation.

Despite Judge Cooperman's claim that she intended to find that K.M. was in need of treatment, supervision, or rehabilitation, she did not make this express determination on the record at the adjudicatory hearing. To the contrary, the adjudicatory hearing transcript contains evidence that suggests that Judge Cooperman made a factual finding that K.M. did not need treatment, supervision, or rehabilitation and concluded that dismissal of the petition was warranted.

After the juvenile court stated on the record that she found that K.M had committed the delinquent crimes alleged, she did not conduct any formal inquiry on the record into whether K.M. was in in need of treatment, supervision, or rehabilitation and the Commonwealth did not seek to offer any evidence to establish this point. Judge Cooperman noted that K.M. had previously been adjudicated delinquent for trespass, theft, and burglary. The juvenile court began to speak to K.M. about his progress in school and K.M. indicated that he believed that he would not get "a good transcript" as he felt the students at his school did not like him. Notes of Testimony (N.T.), 1/15/19, at 19-21.

After a short discussion off the record, Judge Cooperman expressed a desire to ultimately discharge the case, explaining as follows:

> **THE COURT**: Your son has been on supervision for over a year and he's done very, very well. I think from my experience of

looking at kids for ten years, I don't think we have to worry about him.

So, I am going to discharge the case.

Now, when I say that, I say it with respect because I know that the family is on top of this in trying to make sure everything is better. For him, too. He's unhappy in that school so let's try to find something else for him if you can, and let's put this all behind us and move on.

The lesson learned is, when we see something on the street, no matter how tempting it might be, we do not pick it up.

Do we understand that now?

**[K.M.:]** Yes, ma'am.

**THE COURT**: I guess he has to be adjudicated because he has been adjudicated before, and then the discharge.

**THE CLERK**: Are you waiving anything?

**THE COURT**: I'm waiving everything. Good luck, young man.

N.T. at 22-23.

Our review of the transcript shows the juvenile court commended K.M. for the significant progress he had made while on supervision and expressed respect for the support that K.M. was receiving from his family. Immediately thereafter, Judge Cooperman emphasized on two occasions that she wanted to discharge the case and directed that K.M. be released from GPS. These statements are consistent with its stated finding in its order that K.M. was not in need of treatment, supervision, or rehabilitation. *See* 42 Pa.C.S.A. § 6341(b) (stating "[i]f the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered").

- 9 -

However, Judge Cooperman indicated that she "guess[ed that K.M.] had to be adjudicated because he had been adjudicated before, and then the discharge." N.T. at 22-23. The mere fact that a juvenile has had a prior adjudication of delinquency cannot by itself form the basis for a subsequent adjudication of delinquency. *Commonwealth v. M.W.*, 614 Pa. 633, 39 A.3d 958 (2012) (remanding for the juvenile court to determine whether M.W. was in need of treatment, supervision, or rehabilitation, despite the fact that M.W. had been adjudicated delinquent in a separate case and had been committed to treatment, supervision, and rehabilitation).

Moreover, we are not persuaded by the juvenile court's suggestion that she intended to find K.M. was in need of treatment, supervision, or rehabilitation based on the following language in Section 6341(b): "[i]n the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation." 42 Pa.C.S.A. 6341(b).

While the juvenile court, in hindsight, could have based a finding that K.M. was in need of treatment, supervision, or rehabilitation on the fact that K.M. committed a delinquent act that constitutes a third-degree felony (possessing a firearm without a license), this realization does not authorize the juvenile court to amend its dispositional order to change this finding of fact after K.M. filed a notice of appeal.

The transcript of the adjudicatory hearing contains no evidence to support Judge Cooperman's post-appeal assertion that she intended to

adjudicate K.M. delinquent based on the fact that he had committed a delinquent act that constituted a felony. Rather, the record showed that the juvenile court intended to discharge the case based on K.M.'s progress while on supervision and her knowledge that K.M. had a strong family support system at home. The juvenile court indicated that it only felt compelled to adjudicate K.M. delinquent based on the fact that he had a prior adjudication.

As noted above, "the inherent power of correction does not extend to reconsideration of a trial court's exercise of sentencing discretion or its judicial decisions." *Borrin*, 622 Pa. at 436–38, 80 A.3d at 1227–28 (citation omitted). Further, "[a] court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient." *Holmes*, 593 Pa. at 617, 933 A.2d at 67. Similarly, this Court has recognized that a sentencing transcript that "contains inconsistent inferences and is open to competing interpretations" is ambiguous and does not provide a basis for a trial court to amend its written sentencing order. *Kremer*, 206 A.3d at 549.

> Were this Court to hold otherwise, we would permit a trial court to retroactively alter a defendant's sentence to conform to the court's "intentions" when those intentions are not clearly expressed on the record. As noted by our Supreme Court, this is problematic: "[W]e are of the opinion that such alleged inadvertence [concerning a trial court's unexpressed intentions during a sentencing hearing] cannot be tolerated as a matter of public policy. The possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners." *Commonwealth v. Allen*, 443 Pa. 96, [104-05,] 277 A.2d 803, 807 (1971) (citation and internal quotation marks omitted). Accordingly, we cannot accept the trial judge's proclamation of his own intentions because those intentions were

- 11 -

only known to the trial judge himself and do not appear on the face of the sentencing transcript.

*Id*. (citation omitted).

Accordingly, we find the juvenile court erred in adjudicating K.M. delinquent after filing an order indicating that it found K.M. was not in need of treatment, supervision, or rehabilitation. Therefore, we vacate the juvenile court's dispositional order and reverse the adjudication of delinquency.

Dispositional order vacated. Adjudication of delinquency reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/19