J-S08020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT ROHWER | : | |
| | : | |
| Appellant | : | No. 1265 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 1, 2021
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001149-2019

BEFORE:    OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: JULY 6, 2023**

Robert Rowher (Appellant) appeals from the judgment of sentence entered in the Lackawanna County Court of Common Pleas, following his bench trial convictions of theft by deception, deceptive business practices, and home improvement fraud,[1] all graded as felonies of the second degree. Appellant first avers the trial court: (1) lacked authority, at the time of sentencing, to enter additional specific findings of fact on the record; and (2) violated **Apprendi v. New Jersey**, 530 U.S. 466 (2000), by imposing

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa. C.S. §§ 3922(a)(1), 4107(a)(2); 73 P.S. § 517.8(a)(2).

enhanced sentences based on these findings of fact.[2]  We conclude no relief is due on these claims.  Lastly, Appellant asserts the trial court should have merged the sentences for deceptive business practices and home improvement fraud, pursuant to **Commonwealth v. Hill**, 140 A.3d 713 (Pa. Super. 2016).  The trial court and Commonwealth agree, and we likewise conclude the sentences should have merged.  Accordingly, on this last issue, we vacate the judgment of sentence and remand for resentencing.

## I.  Underlying Facts

Appellant does not dispute the trial court opinion's recitation of the underlying facts.  **See** Trial Ct. Op., 11/1/22, at 4-9, 13-14.  The victims, James Russell, M.D., and his brother-in-law, Mark Diefenderfer, along with their spouses, co-own a lake-front property on Newton Lake, in Greenfield Township, Lackawanna County.  **Id.** at 4; N.T. Bench Trial, 7/27/21 (AM), at 16, 60.  The victims decided to raze the existing house and build a "year round home," along with two garages.  Trial Ct. Op. at 5.

The victims' architect knew Appellant, a contractor, from previous jobs. In May of 2017, when Dr. Russell was 65 years old, the victims entered into two construction contracts with Appellant, d/b/a Three Nails Construction.

---

[2] **See Apprendi**, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

The agreed-upon contract price for building the house was $660,900, and additionally $96,000 for the garages. **See** Trial Ct. Op. at 5-6. For each contract, Appellant required a deposit of 50%, an additional 40% to be paid in equal installments every two weeks, and the final 10% to be paid upon completion. Pursuant to these terms, each victim paid Appellant, through December of 2017, a total of $247,695, for a grand sum of $495,390. **See** **id.** at 5-7.

As neither victim lived in the area, they were "unable to supervise the progress of the construction[, and] relied on updates from their architect[.]" Trial Ct. Op. at 7. Construction began on the garage in May of 2017. In December of 2017, the architect

> went to the work site, and no one was there. He called [Appellant] and left a message but did not get a return call. He went back the next day and saw [Appellant's] trailer had been removed from the work site. [The architect] then went to [Appellant's] residence [and] observed that the home was vacant. He never heard from [Appellant] again[ and] notified the victims[.]

**Id.** at 7-8 (trial transcript citations omitted). The only work that had been "done at the property was the foundation." **Id.** at 8 (record citation omitted). At trial, a Commonwealth witness testified the value of the work completed and materials used by Appellant totaled $59,710.[3] N.T., 7/27/21 (PM) at 23.

_____

[3] This witness, a homebuilder, was hired by the victims to complete the construction job. N.T. Bench Trial, 7/27/21 (PM), at 24.

- 3 -

The police investigation revealed Appellant opened two new checking accounts, one at each of the banks from where the victims' checks were drawn. "He did this so he would have immediate access to the cash." Trial Ct. Op. at 9. Appellant then deposited the victims' checks into these accounts, rather than any established account for his business. *See id.* Appellant

> used the money received to pay off his and his wife's credit card debt[ and] personal vehicle loan, purchase a piece of land in Maine, [two] Ford F550's and a Ford Expedition, a new trailer, [and] building materials, [and pay for] child support, groceries for his extended family and rent for family members. Additionally, [Appellant] used money to refund a prior client.

Trial Ct. Op. at 8-9 (trial transcript citations omitted). Appellant

> fled the state without letting anyone know where he was going. By this point he stopped responding to all emails and telephone calls. He was ultimately found in Maine[.]

*Id.* at 17.

## II. Criminal Information, Trial & Sentencing

In January of 2020, an amended criminal information was filed, charging Appellant with one count each of deceptive business practices, home improvement fraud (receives advance payment for services and fails to perform), and theft by deception. Pertinent to this appeal, all were graded as felonies of the second degree (F2). Additionally, the factual summaries supporting each charge all stated the victims were age 60 or older,[4] and that

---

[4] At trial, however, only Dr. Russell testified about his age. *See* N.T., 7/27/21 (AM), at 16.

Appellant accepted $435,680 from the victims but failed to perform or complete home improvement services.

At this juncture, for ease of discussion, we review the grading of the offenses. The deceptive or fraudulent business practices statute provides that a violation constitutes: (1) a misdemeanor of the second degree (M2) if the amount involved is less than $200 or "cannot be satisfactorily ascertained[;]" but (2) a felony of the third degree (F3) if the amount exceeds $2,000. 18 Pa.C.S. § 4107(a.1)(1)(i), (iii), (iv). Additionally, where "the victim of the offense is 60 years of age or older, the grading of the offense shall be one grade higher[.]" 18 Pa.C.S. § 4107(a.1)(3).

With respect to home improvement fraud, Appellant was charged with Subsection 517.8(a)(2) of that statute. **See** 73 P.S. § 517.8(a)(2). A conviction is graded as: (1) a misdemeanor of the first degree (M1) "if the amount of the payment retained is $2,000 or less or . . . cannot be satisfactorily ascertained[;]" and (2) an F3 if this amount exceeds $2,000. 73 P.S. § 517.8(c)(2)(i)-(ii). Similarly, where "the victim is 60 years of age or older, the grading of the offense shall be one grade higher[.]" 73 P.S. § 517.8(c)(4).

Finally, theft is graded as: (1) a misdemeanor of the third degree (M3) if the amount involved is less than $50; (2) an F3 if the amount exceeds $2,000; and (3) an F2 if the amount is between $100,000 and $500,000. 18 Pa.C.S. § 3903(a)(5), (a.1.), (b)(2).

This matter proceeded to a bench trial on June 27 and 28, 2021. Only the Commonwealth gave an opening statement; Appellant opted to not present one. N.T., 7/27/21 (AM), at 6-10. Appellant testified in his defense. Following the presentation of the evidence, both parties filed proposed findings of fact and conclusions of law. The Commonwealth's filing reiterated that Dr. Russell was 65 or 66 years old at the time of the underlying events, and that as of December of 2017, each victim had paid Appellant $247,695, but the value of the work completed was $59,710. Commonwealth's Findings of Facts, 9/9/21, at ¶¶ 1, 26, 34, 53. Appellant's proposed findings of fact acknowledged the victims paid him $498,000, but did not address the victims' ages. *See* Appellant's Findings of Facts, 8/27/21, at ¶ 12.

Trial reconvened on September 10, 2021. The trial court had reviewed both parties' proposed findings of fact and conclusions of law.[5] *See* N.T. Bench Trial Verdict, 9/10/21, at 4, 6. Both parties declined to present closing argument. *Id.* at 6-7. The court then announced the verdict: Appellant was guilty on all counts. Pertinently, while discussing the possibility of bail, the trial court stated Appellant "has been convicted of three felony counts" — which Appellant did not dispute. *See id.* at 10.

---

[5] The trial court had not received Appellant's proposed findings, which was filed electronically. The court thus took a recess to review them. N.T., 9/10/21, at 6.

On December 1, 2021, the trial court conducted a sentencing hearing. Appellant objected to the F2 grading of all three offenses, as set forth in the pre-sentence investigation report (PSI). *See* N.T. Sentencing, 12/1/21, at 3-4. Appellant argued that because, at the time of the verdict, there were no specific findings of fact that a victim was aged 60 or older, or that the offenses involved more than $2,000, any enhanced sentencing (based on higher grading) was prohibited by *Apprendi*. *Id.* at 4-6. Appellant argued each offense should instead be graded with "the lowest [statutory] default," thus: an M2 for deceptive business practices; an M1 for home improvement fraud; and an M3 for theft by deception. *Id.* at 5.

The Commonwealth responded that "from the very beginning of the proceedings," the victim's age and amount of monetary loss were known. N.T., 12/1/21, at 7. The criminal "information list[ed] the basis for the charges, [including] the value of the theft [and the] age of the victim[ ] necessary to [sic]" elevate the grading of the offenses. *Id.* at 8. The Commonwealth pointed out that in announcing the verdict, the trial court specifically referred to the count number for each offense in the information. *Id.* Additionally, the jury instructions, "discussed" by the parties, "clearly set

forth all of the necessary elements of the crimes charged and . . . the grading of the offenses."[6] *Id.* at 7.

The trial court overruled Appellant's objection, reasoning that it had authority under 42 Pa.C.S. § 5505 to correct an "inadvertent omission in the record." N.T., 12/1/21, at 9. The court reiterated that it had directed both parties to file proposed findings of fact, the court reviewed both parties' filings, and the court "simply omitted . . . those words, that [it was] adopting the Commonwealth's findings of fact with respect to the age of the victim[ ] and . . . the amount of the . . . money taken [with respect] to the three different counts." *Id.* at 10. The court stated it was not making any "substantive changes," nor changing the verdict that was entered. *Id.* at 10.

The trial court then imposed a sentence of two to 10 years on each of the three convictions, all to run consecutively. Each sentence was within the standard-range guideline, and the aggregate sentence was six to 30 years' imprisonment. The court also imposed total restitution of $370,680 to the victims. N.T., 12/1/21, at 30. On the same day, the court issued a written "Amended Order," which specified it adopted the Commonwealth's proposed findings of fact, and found the victim Dr. Russell was over the age of 60, and

---

[6] We note that because the trial was a non-jury trial, no jury instructions were given.

the money amount received by Appellant was more than $2,000. Order, 12/1/21.

Appellant filed a timely post-sentence motion, which was denied by operation of law on August 15, 2022.[7] Appellant took this timely appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### III. Statement of Questions Involved

Appellant presents the following three issues for our review:[8]

1. Did the trial court err as a matter of law by correcting or amend[ing] its verdict, ostensibly under 42 Pa.C.S.[ ] § 5505, to render a finding that the offenses involved alleged victims age 60 or greater and/or an amount equal to or greater than $2000.00 to increase the grading on each count and enhance [Appellant's] sentence?

---

[7] The tenth day after sentencing was Saturday, December 11, 2021. **See** Pa.R.Crim.P. 720(A)(1) (written post-sentence motion shall be filed no later than 10 days after imposition of sentence). Appellant thus had until Monday, December 13th, to file a post-sentence motion, and he timely filed on that day. **See** 1 Pa.C.S. § 1908.

The only issues raised in the post-sentence motion challenged the sufficiency and weight of the evidence. Nevertheless, Appellant raised his amended verdict and **Apprendi** claims at sentencing, and all of his issues on appeal go to the legality of sentencing, and thus cannot be waived. **See Commonwealth v. Hill**, 238 A.3d 399, 407 (Pa. 2020) (generally, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[,]" but challenges to the legality of sentences can be addressed on appeal even if they were not preserved before the trial court) (citation omitted); **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (**en banc**) (**Apprendi** challenge to a sentence implicates legality of that sentence and cannot be waived on appeal).

[8] We have reordered the issues for ease of review.

2. Did the trial court impose an illegal sentence by enhancing [Appellant's] sentence on each count and increasing their grade where, at the time of the verdict, a finding was not made as to the age of the alleged victims and/or that the . . . alleged fraud involved $2000.00 or greater contrary to [*Apprendi*]?

3. Did the trial court err as a matter of law when failing to merge the sentences imposed for deceptive or fraudulent business practices and home improvement fraud?

Appellant's Brief at 2.

## IV. Verdict & Findings of Fact

In his first issue, Appellant avers the trial court erred in amending the verdict or entering additional findings of fact once the verdict was entered. First, he maintains that where a trial court issues a verdict in open court, the verdict, like a jury verdict, cannot later be changed at the time of sentencing. Appellant's Brief at 14-16, *citing* **Commonwealth v. Stark**, 584 A.2d 289, 290 (Pa. 1990); **Commonwealth v. Farinella**, 887 A.2d 273, 275 (Pa. Super. 2005). Next, Appellant argues Section 5505 did not provide authority to the trial court to change the verdict. He reasons that while Section 5505 provides 30 days for the modification of an order, here, 82 days elapsed between the verdict and sentencing. Appellant's Brief at 17-18. Appellant contends that our Supreme Court has limited changing a verdict to situations where there has been a "fundamental defect," "such as where the trial court realizes it lacked jurisdiction, jeopardy had previously attached[,] or a charging document did not include [an] offense[.]" **Id.** at 14-15 (some quotation marks omitted). Appellant also cites this Court's prior holding that

- 10 -

a trial court cannot amend a verdict that is not ambiguous and is proper on its face. *Id.* at 16, *citing* **Farinella**, 887 A.2d at 275. Appellant maintains that here, the original September 1, 2021, verdict did not contain any patent or obvious mistake, nor "was the order/verdict inconsistent with what had procedurally occurred in the case." Appellant's Brief at 23. As the court had no authority to subsequently make additional findings of fact, he concludes, the amended verdict should be vacated. We determine no relief is due.

The issue of whether the trial court erred in correcting a clerical error or clarifying a judgment of sentence raises a question of law, and our scope of review is plenary and our standard of review is *de novo*. **See Commonwealth v. Borrin**, 80 A.3d 1219, 1225 (Pa. 2013) (OAJC).

Section 5505 of the Pennsylvania Judicial Code provides:

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505.

In addition, a trial court has under common law "the inherent power to correct errors in its records or orders so they speak 'the truth,' and thereby reflect what actually took place in judicial proceedings." **Borrin**, 80 A.3d at 1227. Our Supreme Court has explained:

We have set a high bar for differentiating between errors that may be corrected under the inherent powers of trial courts, and those that may not, describing correctible errors as those determined to be "patent and obvious mistakes." The term "clerical error" has

- 11 -

been long used by our courts to describe an omission or a statement in the record or an order shown to be inconsistent with what in fact occurred in a case, and, thus, subject to repair.

*Id.* (citations omitted).

We reiterate the criminal information clearly: (1) charged Appellant with all three offenses graded as F2s; and (2) averred, in support of each charge, the victims were age 60 or older **and** Appellant accepted $435,680 from the victims but failed to perform or complete home improvement services. It is also clear the Commonwealth presented evidence to support the higher graded convictions.[9] There is no indication in the trial transcripts that the parties ever argued for any other grading, nor that the trial court was presented with any other factual scenario that would affect the grading (*i.e.* the ages of the victims or amount of money involved). Indeed, we note the

_____

[9] Appellant did not refute Dr. Russell's age or the amount of the money involved. Instead, his defense was that regardless of the victims' satisfaction, he performed good faith work, and there was no evidence he had ill intent at the time the contract was made. *See* N.T. Bench Trial, 7/28/21, at 4-5. In support, Appellant testified: (1) "he lost two months of work due to water issues[,]" and he informed the victims of this water delay; (2) "the victims were constantly in and out and were able to observe the work being done[;]" (3) "he was dealing with a recurring back issue, [but] had employees . . . to continue working even when he could not[;]" (4) although he had moved to Maine, he intended "to finish the construction job as the contract was still open until September of 2018[;]" and (5) he used the victims' money to purchase more than $160,000 of building materials, but "all of the receipts were lost in a flood at his home." Trial Ct. Op. at 13-14. Finally, with respect to the two checking accounts used for depositing the victims' checks, we note Appellant's own proposed findings of fact plainly acknowledged his "family members used [these] account[s] which counted for many cash withdrawals." Appellant's Findings of Fact at ¶ 36.

Commonwealth's opening argument twice referred to Appellant's accepting more than $400,000 from the victims and then abandoning the construction work. N.T. Bench Trial, 7/27/21 (AM), at 6-8. Appellant opted to not give any opening statement at all. *Id.* at 10. **Both parties** declined to give closing arguments, instead relying on the proposed findings of fact submitted. N.T., 9/1/21, at 6-7.

Moreover, following the presentation of evidence, the trial court emphasized it had reviewed both parties' proposed findings of fact. The Commonwealth's filing, in the very first paragraph, averred Dr. Russell was 65 or 66 years old at the time of the offenses, and also that each victim paid Appellant $247,695. Commonwealth's Findings of Fact at ¶¶ 1, 26, 34. Meanwhile, Appellant's proposed findings acknowledged the victims had paid him $498,000, and did not make any mention of the victims' ages. Appellant's Findings of Fact at ¶ 12.

Additionally, although there was a bench trial, at the beginning of each day of trial, as well at the announcement of the verdict, the trial court and parties referred to the standard jury instructions, which addressed "the three separate offenses." *See* N.T., 7/27/21 (AM), at 3-4; N.T., 7/28/21, at 10; N.T., 9/10/21, at 4.

At the sentencing hearing, as stated above, the trial court explained that its non-articulation of the two relevant findings of fact was "an inadvertent omission," as it had "simply omitted . . . those words[.]" N.T., 12/1/21, at 9-

10. The court referred to its "inherent powers to amend its records to correct mistakes of the clerk or other officers of the Court . . . or supply [sic] defects or omission in the record, even after the lapse of 30 days for the modification of orders." *Id.* at 10. The court denied it was making a "substantive change[,]" or "changing the verdict." *Id.*

Finally, we determine the decisional law, on which Appellant relies, is distinguishable. In ***Stark***, the trial court found the defendant guilty of terroristic threats and not guilty of simply assault. ***Stark***, 584 A.2d at 290. The case proceeded immediately to sentencing at the same hearing, and the trial court, displeased with the Commonwealth's arguments, announced, "You're asking for a directed verdict? Not guilty; all right? If you want to play that game, not guilty; okay? Don't play games with me." *Id.* (record citation omitted). On the Commonwealth's appeal, the Pennsylvania Supreme Court summarized, "As this transcript shows, the verdict of guilty of terroristic threats was changed, during . . . sentencing, to one of not guilty." *Id.* The Court considered:

> Both the trial court and Superior Court characterized the trial court's decision to change [the defendant's] verdict as a *sua sponte* grant of a motion in arrest of judgment. It is well settled that only causes appearing on the face of the record or insufficiency of the evidence will justify the grant of a motion in arrest of judgment. Causes appearing on the face of the record include such fundamental defects as lack of jurisdiction, former jeopardy or failure of an indictment or information to charge an offense.
>
> Since the record reveals that the trial judge changed this verdict for reasons unrelated to the sufficiency of the evidence or causes

- 14 -

appearing on the face of the record, it is clear that this decision by the trial court was not a grant of a motion in arrest of judgment.[] In changing [the] verdict, the trial judge went beyond the authority which a trial judge may properly exercise over a verdict. Discomfort by a trial judge during a sentencing proceeding over the prospect of ordering confinement does not form a basis for any authorized action by that trial judge. The verdict of not guilty, therefore, was a legal nullity.[] . . .

*Id.* at 291 (citations omitted).

Similarly, in **Farinella**, at sentencing the trial court "found" the defendant not guilty of an offense it had previously found him guilty of. Following a non-jury trial, the trial court found the defendant guilty of aggravated assault, without specifying the grading, as well as other offenses. **Farinella**, 887 A.2d at 274.

[At] sentencing, [defense] counsel noted that although the court had found [the defendant] guilty of aggravated assault, the court had not placed on the record the grading[. Defense] counsel then asked the court to grade the offense as an F-2. The Commonwealth objected[,] noting that it had moved only on an F-1 aggravated assault.[] Despite the Commonwealth's objection, the court announced that it was grading the conviction as an F-2 aggravated assault. This announcement sparked additional [arguments from the Commonwealth].

After this exchange between the [Commonwealth] and the court had continued for awhile, the court announced that it was finding [the defendant] guilty of simple assault and **not guilty of aggravated assault**. [The Commonwealth] then objected on the basis that the court had already rendered a verdict of guilty on aggravated assault at the close of the non-jury trial. Ultimately, the court [overruled the Commonwealth's objections.]

*Id.* (emphasis added). In its opinion, the trial court explained:

Prior to sentencing this Court performed an extensive review of the notes of testimony[ and] it became increasingly apparent . . . that [the court] had erroneously pronounced the defendant guilty

of aggravated assault when indeed the facts accepted by this Court supported a verdict of simple assault.

*Id.* at 275. The court contended "its findings of fact remained the same and that the verdict rendered at sentencing was merely a correction to reflect those findings of fact.[ ]" *Id.*

On appeal by the Commonwealth, this Court concluded the trial court erred in changing the verdict at the time of sentencing. *Farinella*, 887 A.2d at 275. This Court reasoned the original verdict "was not ambiguous and, upon its face . . . was proper." *Id.* at 276. We stated: "[O]nce announced in open court, there was no basis for "looking behind" the verdict to the factfinder's reasoning or specific findings of fact, nor was there a basis for correcting what was, upon its face, a perfectly valid verdict." *Id.* In a footnote, we considered the trial "court was not merely correcting an erroneous announcement of a verdict but, rather, rethought its verdict while preparing for sentencing and substituted a new verdict." *Id.* at 276 n.3.

Unlike the facts in *Stark* and *Farinella*, in this case the trial court did not subsequently find, at sentencing, Appellant not guilty of the charges where it had previously announced guilty verdicts. Instead, the court clarified the factual findings on which it had based Appellant's guilty verdicts.

In light of all the foregoing, we decline to find trial court error in clarifying or affirming, at sentencing, that each offense was properly graded as an F2. Again, no other grading was ever before the trial court, who sat as finder of fact, and it was not tasked with finding whether additional facts were

- 16 -

present for purposes of an enhanced grading. The trial court was not changing the verdict, but merely articulating the reasoning for the verdict, where it had found Appellant guilty of each offense beyond a reasonable doubt.

Accordingly, although sentencing occurred more than 30 days after the verdict was announced, *see* 42 Pa.C.S. § 5505, the court possessed the inherent authority under common law to enter an order to "reflect what actually took place in judicial proceedings." *See Borrin*, 80 A.3d at 1227. No relief is due.

## V. *Apprendi* Sentencing Claim

In his second issue, Appellant asserts, pursuant to *Apprendi*, the trial court imposed an illegal enhanced sentence on each count. Appellant contends "it is unclear and cannot be concluded with certainty from the original verdict whether the factfinder [found] the aggravating factors were proven" beyond a reasonable doubt. *See* Appellant's Brief at 30. Appellant then relies on *Commonwealth v. Dixon*, 255 A.3d 1258 (Pa. 2021), which held that under *Apprendi*, certain provisions of the intimidation of a witness statute, which provided that additional facts increased the grading, were not mere grading provisions, but instead elements of the offense. Appellant's Brief at 27-28. Appellant concludes that because the trial court found him "guilty in a general fashion on each offense and because of the ambiguity of the verdict," each offense should have been graded with the lowest grade

possible. *Id.* at 30-31. In light of our discussion above, we conclude no relief is due.

We reiterate that in *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

We incorporate our above discussion, that the trial court did not err in entering specific, additional findings of fact, that the age of one victim was over 60, and the amount involved in this case exceeded $2,000. Here, the trial court did find beyond a reasonable doubt that at least one victim was 65 or 66 at the time of the offenses, and the victims gave Appellant more than $2,000. Accordingly, we decline to grant relief on Appellant's *Apprendi* claim.

## VI. Sentencing Merger

In his final issue, Appellant avers the trial court erred in not merging the sentences for deceptive business practices, 18 Pa.C.S. § 4107(a)(2), and home improvement fraud, 73 P.S. § 517.8(a)(2), where the convictions were based on the same underlying conduct. Appellant maintains this Court has held the same subsections of these two offenses merge for sentencing purposes. Appellant's Brief at 13, *citing* **Commonwealth v. Hill**, 140 A.3d 713 (Pa. Super. 2016). The trial court and Commonwealth agree that pursuant to **Hill**, the sentences should have merged. Trial Ct. Op. at 23;

Commonwealth's Brief at 9-10. We likewise agree and thus vacate the judgment of sentence and remand for resentencing.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence; therefore, our standard of review is *de novo* and our scope of review is plenary." ***Hill***, 140 A.3d at 715. In ***Hill***, this Court explained:

> Our legislature has defined the circumstances under which convictions for separate crimes may merge for the purpose of sentencing.
>
> > **Merger of sentences.** No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.[ ] § 9765.
>
> > To determine whether offenses are greater and lesser included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. If both crimes require proof of at least one element that the other does not, then the sentences do not merge.

***Hill***, 140 A.3d at 716 (some citations omitted).

Appellant was convicted under Subsection 4107(a)(2) of the deceptive or fraudulent business practices statute, which provides: "A person commits an offense if, in the course of business, the person . . . (2) sells, offers or exposes for sale, or delivers less than the represented quantity of any

- 19 -

commodity or service[.]" ***See*** 18 Pa.C.S. § 4107(a)(2). Pennsylvania courts have held that "fraud, which includes a wrongful intent to deceive, is an element of the crime of deceptive business practices." ***Commonwealth v. Eline***, 940 A.2d 421, 433 (Pa. Super. 2007).

Appellant was also convicted of Subsection 517.8(a)(2) of the home improvement fraud statute:

> **(a) Offense defined.—**A person commits the offense of home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
> \* \* \*
>
> (2) receives any advance payment for performing home improvement services or providing home improvement materials and fails to perform or provide such services or materials when specified in the contract taking into account any force majeure or unforeseen labor strike that would extend the time frame or unless extended by agreement with the owner and fails to return the payment received for such services or materials which were not provided by that date[.]

***See*** 73 P.S. § 517.8(a)(2).

In ***Hill***, this Court addressed the question of whether the same subsections of these offenses merged — where they both arose from the same criminal conduct — and held they did. ***Hill***, 140 A.3d at 716, 718. This Court reasoned:

> Proof of deceptive or fraudulent business practices requires that a defendant (1) with a wrongful intent to deceive; (2) "in the course of business;" (3) "sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service." 18 Pa.C.S.[ ] § 4107(a)(2); ***see also Eline***, 940 A.2d at 433.

- 20 -

Proof of home improvement fraud requires that a defendant (1) "with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone;" (2) when "performing home improvement services or providing home improvement materials;" (3) "fails to perform or provide such services or materials;" (4) "receives any advance payment;" and (5) "fails to return the payment received for such services or materials which were not provided." *See* 73 P.S. § 517.8(a)(2).

Comparing the elements of these two offenses, we conclude that all three elements of deceptive or fraudulent business practices are . . . included within the first three elements of home improvement fraud, and home improvement fraud has at least one additional element. Therefore, [the defendant's] convictions for these crimes should have merged for sentencing purposes. . . .

*Hill*, 140 A.3d at 718 (some citations omitted & paragraph break added).

*Hill* applies squarely to Appellant's issue, and we conclude the sentences for theft by deception, at Subsection 4107(a)(2), and home improvement fraud, at Subsection 517.8(a)(2) should have merged. We thus vacate the sentence for theft by deception. As this disposition will disrupt the overall sentencing scheme, we vacate the judgment of sentence and remand for resentencing.

## VII. Conclusion

In sum, we conclude no relief is due on Appellant's Section 5505 and *Apprendi* challenges. However, we determine the sentences for theft by deception and home improvement fraud should have merged. We thus vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judge Colins joins the Memorandum.

Judge Olson Concurs in the Result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2023